Carl E. BRANT, Plaintiff,

v.

**The PRINCIPAL LIFE AND DISABILITY INSURANCE COMPANY and Armour Swift Eckrich, Defendants.**

No. C 98–3064–MWB.

United States District Court,
N.D. Iowa,
Central Division.

April 8, 2002.

Carl E. Brant, pro se.

David Swinton, Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, IA, for Principal Life.

Christopher M. Bikus, McGrath, North, Mullin & Katz, P.C., Omaha, NE, for Armour Swift–Eckrich.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. INTRODUCTION ...................................................1103
 A. Procedural Background ...............................................1103
 B. Factual Background ..................................................1103

II. LEGAL ANALYSIS .......................................................1105
 A. Standards For Summary Judgment ....................................1105
 1. Requirements of Rule 56 ........................................1106
 2. The parties' burdens ...........................................1107
 B. What Record Can Be Considered? ....................................1108
 C. Merits Of The Motions .............................................1108
 1. Termination of benefits ........................................1108
 a. Standard for judicial review ...............................1109
 b. Application of the standard ................................1110
 2. Bars to termination of coverage ................................1112
 a. Promissory estoppel ........................................1112
 b. Misrepresentation ..........................................1113
 i. Equitable estoppel .....................................1113
 ii. Breach of fiduciary duty ...............................1118

III. CONCLUSION ...........................................................1121

This matter comes before the court pursuant to the December 31, 2001, motion for summary judgment by defendant Armour Swift–Eckrich (ASE); the January 2, 2002, motion for summary judgment by defendant Principal Life and Disability Insurance Company (Principal Life); and the March 14, 2002, motion by plaintiff Carl Brant to quash ASE's Exhibit A in support of its summary judgment motion, which is excerpts of Mr. Brant's deposition. These motions have now been fully briefed and Principal Life's request for oral arguments on the motions for summary judgment has been withdrawn. Therefore, these motions are now ripe for consideration by the court. This matter is set for trial to begin on April 29, 2002.

## I. INTRODUCTION

### A. Procedural Background

Plaintiff Carl Brant, who is prosecuting this action *pro se,* originally filed this action on September 14, 1998, in the Iowa District Court for Cerro Gordo County, against his employer, ASE, and its insurance provider, Principal Life. In his complaint, Mr. Brant alleged the following claims: Count I alleged a claim under the Americans with Disabilities Act (ADA); Count II alleged a claim for life insurance benefits; and Count III alleged a claim for damages for "the pain and anguish of Plaintiff's family when faced with the possibility of Plaintiff's death and costs associated with Plaintiff's demise" as the result of a "brain aneurysm" Brant suffered, but from which he fortunately recovered.

Defendant ASE removed the action to this federal court on October 13, 1998. At various stages in the proceedings, the court either dismissed or granted summary judgment in favor of the defendants on each of Brant's claims. Upon Brant's appeal, the Eighth Circuit Court of Appeals affirmed dismissal of Counts I and III, but reinstated and remanded Brant's claim in Count II as a claim, under the Employee Retirement Income Security Act (ERISA), for reinstatement of his life insurance benefits, holding that Mr. Brant's employer and its insurance provider were proper defendants in such an action, because their administrative services agreement gave them discretionary authority to determine eligibility for benefits and to construe the terms of the plan. That remaining claim is now before the court on the defendants' motions for summary judgment.

### B. Factual Background

The court will not attempt here an exhaustive dissertation of the undisputed and disputed facts in this case. Rather, the court will present sufficient of the facts, both disputed and undisputed, to put in context the parties' arguments for and against summary judgment on Brant's remaining claim for reinstatement of insurance benefits.

Brant worked for ASE as a supervisor in ASE's processed meat/packaged meat department until his employment was interrupted by health problems, including emphysema and an upper lung blockage, in September 1994. His last day of active employment was September 6, 1994. Brant was a participant in ASE's employee benefit plan, which provided, among other things, basic and supplemental life insurance and disability insurance. In 1995, Brant applied for long term disability benefits (LTD) under the benefit plan.

On April 17, 1995, ASE's Manager of Human Resources, Daryl Johnson, sent Brant a letter concerning continuation of his benefits while on LTD. The letter stated, in pertinent part, the following:

> When you become approved for LTD, your contributions for LTD and Supplemental Life will cease. These benefits continue at no cost to you.

You must, however, continue to contribute to the Medical/Dental/Dependent Life Plans or coverages will terminate.

Plaintiff's Appendix in Support of Resistance to Defendants' Motions for Summary Judgment, Exhibit 9. The letter is silent regarding contributions for basic life insurance.

ASE concedes that the April 17, 1995, letter is, perhaps, "inartful," but does not constitute a misrepresentation, because it conveys that if Brant is "disabled," his contributions for LTD and Supplemental Life Insurance will cease. Principal Life concedes that the April 17, 1995, letter is inaccurate, to the extent that it suggests that approval for LTD is the prerequisite for continuation of LTD and supplemental life insurance coverage without contributions from Mr. Brant. As Principal Life points out, however, the definition of "disability" permitting continuation of coverage during disability under the terms of the life insurance portion of the benefit plan is different from the definition of "disability" for purposes of the LTD benefits portion of the plan, so that qualification for LTD benefits does not qualify a member for continuation of life insurance coverage without employee contributions.

Specifically, the definition of "disability" for LTD benefits provides that "disability" means "[a] Member's inability, solely and directly because of sickness, injury, or pregnancy ... to perform the majority of the material duties of his or her *normal* job." Defendant Principal Life's Appendix in Support of Summary Judgment, Exhibit 2 (Group Long Term Disability Insurance Policy), Appendix at 7 (emphasis added). However, a member of the benefit plan is considered "disabled" for purposes of "Coverage During Disability" under the Life Insurance Policy "if, because of sickness or injury, the Member is not able to work at *any job* that reasonably fits his or her background and training." Defendant

Principal Life's Appendix, Exhibit 5 (Member Life Insurance, Accidental Death and Dismemberment Insurance, and Dependent Life Insurance Policy), Appendix at 78 (emphasis added).

Although Brant had been approved for LTD, Principal Life notified Brant by letter dated August 10, 1995, that he did not qualify for continuation of life insurance coverage under the "Coverage During Disability" provision of the Life Insurance Policy. The letter notifying Brant of that decision, in pertinent part, stated the following:

*BENEFIT QUALIFICATION*

- The member will be considered disabled, if because of sickness or injury, the member is not able to work at any job that reasonably fits his or her background and training.

*LIMITATIONS*

- Medical received from Dr. Levinson dated May 4, 1995, states that he feels you are not totally disabled based on your pulmonary functions which at this time are really not too bad.

- Dr. Levinson lists your limitations are working in temperatures of greater than 55 degrees in an 8–hour day.

- He further feels you are unable to work at Armour Swift Eckrich based on this limitation.

*SUMMARY*

According to our records, you have a 12th grade education, and prior jobs held in the past consist of services in the U.S. Army, and at a packing company. Based on your limitations, along with your background and training, it appears you should be able to perform some other type of work. For this reason, we are declining your claim for the continuation of life insurance.

Due to the termination of your life insurance, you are entitled to convert your life insurance in an amount of $107,000.00 to an individual policy on a premium paying basis trade. Application for such conversion must be made within 31 days from the date of this letter. For your convenience, we have enclosed a conversion application. The Statement of Employer Section does not need to be completed. If you wish to take advantage of this conversion privilege, please return the completed application and a check for the first premium within 31 days from the date of this letter.

If you have any questions, or if you feel you have additional information that was not taken into account in this decision, please do not hesitate to contact us. In order to review your claim for reconsideration for this benefit, you will need to furnish medical information which supports total and continuous disability. In addition, you may request a review of the decision reached on your claim. Such request should be made in writing within 120 days of receipt of this letter and may include any issues or comments concerning denial of the claim. Upon receipt of a request, the claim will be reviewed and you will receive a written decision promptly.

*Id.,* Exhibit 4 (Letter of August 10, 1995), Appendix at 43–44. Thus, the August 10, 1995, letter notified Brant that he did not qualify for continuation of his insurance coverage without contributions and that he had 31 days from the date of the letter to convert his life insurance to an individual policy.

Brant contends that the conversion application to which the August 10, 1995, letter refers was not, in fact, enclosed. He notified the Principal Life Claim Specialist who sent the letter of that fact and also advised her that he had been informed by a representative of ASE that, because of his 10 years or more of service with ASE, he qualified for free life insurance as stated in the April 17, 1995, letter. He contends that Principal Life's representative then referred him to ASE.

Brant does not contend that Principal Life thereafter refused to provide the conversion application or to convert his group life insurance policy to an individual policy when presented with a conversion application. Rather, it is undisputed that Brant did not attempt to convert the life insurance policy. Neither did Brant request any further review of the termination of his life insurance, in the manner indicated in the August 10, 1995, letter, or submit any payment for premiums due after the expiration of the conversion period. Consequently, Principal Life terminated Brant's life insurance coverage. Brant has not submitted any evidence of further communications he may have had with ASE about his life insurance coverage after August 10, 1995, although he has submitted copies of correspondence from Principal Life and other entities regarding his disability and life insurance coverage.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. #1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,*

966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the out-come of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston,* 133 F.3d at 1107; *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Im-*

*plants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same).

### B. What Record Can Be Considered?

Before applying the standards stated just above, the court must first determine what portions of the parties' submissions the court can consider in resolving the defendants' motions for summary judgment. Brant and Principal Life each seek to exclude exhibits and documents from the court's consideration on the defendants' motions for summary judgment.

In its reply brief in support of its motion for summary judgment, Principal Life contends that Brant's resistance fails to comply with Local Rule 56.1, because Brant has not properly responded to Principal Life's statement of material facts nor properly presented his own statement of additional material facts; that Brant failed to comply with federal rules pertaining to discovery, in that he now relies on voluminous materials not provided in response to pertinent discovery requests in his attempt to generate genuine issues of material fact; and that Brant is impermissibly expanding upon or changing the claims he has pleaded long past the deadline for amendments. In a "Rebuttal Brief," Brant contends that he did produce in response to Principal Life's discovery requests all of the documents that he thought would be necessary to show that he was to have his life insurance paid by ASE and that the defendants were at fault for terminating his life insurance, which he thought consisted of the April 17, 1995, letter from ASE, and the August 10, 1995, letter from Principal Life terminating his life insurance. He contends that the additional documents includ-ed in his resistance and appendix were included "to make certain that the Court was aware of the lengths the Defendants would go to discredit Brant and to show the Court the reasons why Brant no longer has any trust in Principal and ASE, and to show the Defendants' lack of creditability [sic]." Brant's Rebuttal Brief to Reply Brief of Defendants Principal Life and ASE at 1–2. The short answer to this dispute is that, for reasons amplified below, even if the court considers all of Brant's submissions, those submissions will not change the outcome on the defendants' motions for summary judgment.

■ For his part, Brant contends that the court should "quash" consideration of any of his deposition testimony, as proffered by the defendants, because of purported violations of Rule 30 of the Federal Rules of Civil Procedure. Specifically, he contends that ASE allowed counsel for Principal Life to participate in the deposition without first notifying Brant, even though Principal Life had not sought to depose Brant, and that he was not furnished with a complete, unabridged copy of the deposition at ASE's expense. ASE contends that nothing in Rule 30 of the Federal Rules of Civil Procedure requires ASE to provide Brant with a copy of his deposition at ASE's expense or to provide notice to the deponent of who will be present at a deposition, nor is it plausible to construe the Federal Rules of Civil Procedure to contemplate exclusion of counsel for a named party from the deposition of another party.

The short answer to this second dispute concerning the record that the court can consider is that Rule 30 does neither of the things Brant contends that it does. The court can find nothing in Rule 30 that requires notice to the deponent of who will be present at a deposition. *See* Fed. R. Civ. P. 30(b) (stating the requirements for

notice of a deposition). Although Rule 30(d)(4) provides that a court may terminate or limit the scope and manner of taking a deposition "upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party," the court cannot find that a deposition is being conducted in "bad faith" simply because counsel for one defendant, even one who had previously declined to depose the plaintiff, participated in a deposition called by another defendant. Moreover, ASE is correct that Brant's recourse, if he believed that the deposition was being conducted in "bad faith," was to seek a protective order from the court during the deposition pursuant to Rule 30(d)(4). Also, Rule 30(f)(2) undermines Brant's argument that he was entitled to a copy of his deposition at ASE's expense. That rule provides, "Upon payment of reasonable charges therefor, the officer [*i.e.*, the 'officer appointed or designated under Rule 28' to take the deposition under oath, *see* FED. R. CIV. P. 30(b)(4) & 28(a)] shall furnish a copy of the transcript or other recording of the deposition to any party or to the deponent." FED. R. CIV. P. 30(f)(2). Thus, Brant was not entitled to a copy of his deposition unless he paid for it. Brant's motion to quash will be denied and the court will consider his deposition in its resolution of the defendants' motions for summary judgment.

### C. Merits Of The Motions

The court finds that the parties' contentions concerning summary judgment, viewed in the context of the governing law, revolve around two issues: (1) Whether ASE and/or Principal Life, as plan fiduciaries under ERISA, abused their discretion in terminating Brant's life insurance coverage; and (2) whether the April 17, 1995, letter estopped or otherwise barred the defendants from terminating Brant's life insurance coverage.

### 1. Termination of benefits

#### a. Standard for judicial review

■ As the Eighth Circuit Court of Appeals has repeatedly explained, " 'ERISA provides a plan beneficiary with the right to judicial review of a benefits determination.' " *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 642–43 (8th Cir.2002) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir.1998)); *Delta Family–Care Disability and Survivorship Plan v. Marshall*, 258 F.3d 834, 840 (8th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1173, 152 L.Ed.2d 117 (2002). The Eighth Circuit Court of Appeals determined on appeal in this case that the Plan at issue gave both ASE and Principal Life discretionary authority to determine eligibility for benefits. Under such circumstances, courts "ordinarily review the administrator's decision for an abuse of discretion." *See id.* (again citing *Woo*); *Clapp v. Citibank, N.A., Disability Plan (501)*, 262 F.3d 820, 826 (8th Cir.2001); *Marshall*, 258 F.3d at 840. Although this court reviews the defendants' decision only for abuse of discretion, the appellate court will "review the district court's application of the deferential standard de novo." *Clapp*, 262 F.3d at 828; *Marshall*, 258 F.3d at 841.

■ Under the deferential abuse-of-discretion standard applicable to judicial review of the eligibility determination at issue here, "a reviewing court should consider only the evidence before the plan administrator when the claim was denied." *Shelton*, 285 F.3d 640, 642–43. The court must "look to see whether [the administrator's] decision was reasonable." *Clapp*, 262 F.3d at 828; *Marshall*, 258 F.3d at 841. As the Eighth Circuit Court of Appeals has explained,

In doing so, [the court] must determine whether the decision is supported by substantial evidence, "which is more

than a scintilla, but less than a preponderance." *Sahulka v. Lucent Techs., Inc.,* 206 F.3d 763, 767–68 (8th Cir.2000) (internal quotes omitted). [The administrator's] decision "will be deemed reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Cash [v. Wal–Mart Group Health Plan],* 107 F.3d [637,] 641 [(8th Cir.1997)] (internal quotes omitted). [The court] will not disturb a decision supported by a reasonable explanation "even though a different reasonable interpretation could have been made." *Id.* [The court must] consider "[b]oth the quantity and quality of the evidence." *Fletcher–Merrit v. NorAm Energy Corp.,* 250 F.3d 1174, 1179 (8th Cir. 2001).

*Clapp,* 262 F.3d at 828; *accord Marshall,* 258 F.3d at 841. "Put another way, the [administrator's] decision need not be the only sensible interpretation, so long as its decision offer[s] a reasoned explanation, based on the evidence, for a particular outcome." *Marshall,* 258 F.3d at 841 (citing *Donaho v. FMC Corp.,* 74 F.3d 894, 899 (8th Cir.1996)).[1]

#### b. Application of the standard

■ In the first instance, the court agrees with Principal Life that, prior to his resistance to Principal Life's motion for summary judgment, Brant had conceded that he was not "disabled" within the meaning of the "Coverage During Disabili-ty" provision of the Life Insurance Policy because his condition was not such that he was "not able to work at *any job* that reasonably fi[t] [Brant's] background and training." Defendant Principal Life's Appendix, Exhibit 5 (Member Life Insurance, Accidental Death and Dismemberment Insurance, and Dependent Life Insurance Policy), Appendix at 78 (emphasis added). In response to Principal Life's First Set of Requests for Admissions, Brant specifically admitted that he "was not disabled, as that term is defined in the letter … o[f] August 10, 1995." *See* Defendant Principal Life's Appendix, Exhibit 4 (Plaintiff's Response to Defendant Principal Life Insurance Company's First Set of Requests for Admissions, Request for Production of Documents and Interrogatories to Plaintiff), Appendix at 39 (response to request for admission no. 4). The definition of the term in the August 10, 1995, letter, as quoted above, matches the definition of disability for purposes of "Coverage During Disability." *Compare* Defendant Principal Life's Appendix, Exhibit 4 (Letter of August 10, 1995), Appendix at 43; *with* Defendant Principal Life's Appendix, Exhibit 5 (Member Life Insurance, Accidental Death and Dismemberment Insurance, and Dependent Life Insurance Policy), Appendix at 78 (definition of "disability" for "Coverage During Disability"). Thus, Brant initially conceded that the defendants' determination that he was *not* disabled within the meaning of the "Coverage During Disability" provisions of the Life

---

1. When the question is whether the administrator has properly interpreted the terms of the plan, a question not presented here, a different test of reasonableness applies:

 In determining whether the administrator's decision constituted an abuse of discretion, we apply five factors: (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent;

 (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan. *Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997).

 *Shelton,* 285 F.3d 640, 643–44.

Insurance Policy was "reasonable." *Clapp,* 262 F.3d at 828 (reasonableness standard); *Marshall,* 258 F.3d at 841 (same).

Moreover, in the face of Brant's belated challenge to the defendants' determination that Brant was not qualified for continuation of his life insurance coverage at ASE's expense, there is, as a matter of law, "substantial evidence, 'which is more than a scintilla, but less than a preponderance,'" supporting that determination. *See Clapp,* 262 F.3d at 828; *Marshall,* 258 F.3d at 841. The August 10, 1995, letter shows that Principal Life reviewed Brant's medical records and the opinions of Dr. Levinson, Brant's educational background and training, and Brant's prior employment before determining that Brant was not disabled to the requisite standard. This evidence is "substantial" enough—both in terms of "quantity" and "quality" of the evidence, *see Clapp,* 262 F.3d at 828 (citing *Fletcher–Merrit,* 250 F.3d at 1179)—to support the "reasonableness" of Principal Life's determination that Brant's condition was not such that he was "not able to work at *any job* that reasonably fi[t] his ... background and training." Defendant Principal Life's Appendix, Exhibit 5 (Member Life Insurance, Accidental Death and Dismemberment Insurance, and Dependent Life Insurance Policy), Appendix at 78 (emphasis added). Again, the question is not whether a reasonable person *would* have reached the same decision, but whether a reasonable person *could* have done so, *see Clapp,* 262 F.3d at 828; *Marshall,* 258 F.3d at 841, and that is certainly the case here. This court is not free to disturb the explanation for the termination of coverage in this case, because it is "supported by a reasonable explanation 'even though a different reasonable interpretation could have been made.'" *Id.* (quoting *Cash,* 107 F.3d at 641). Put another way, the defendants' decision to terminate the life insurance coverage, based on a deter-mination that Brant was not "disabled," may not have been the only sensible interpretation, but that decision offered a reasoned explanation, based on the evidence, for the particular outcome in this case. *Marshall,* 258 F.3d at 841.

Nor do Brant's other belated contentions challenging the "disability" determination generate any genuine issues of material fact on the question of the propriety of the defendants' termination of his life insurance coverage. Brant contends that evidence that he graduated from high school in 1960 and that he served in the Army until 1963 have no bearing on his ability to perform "any job," when his only training and work history since 1963 has been in the meat packing industry. However, Brant does not explain how training and work history in the "meat packing industry" is inapplicable to other employment beyond the job he actually occupied at ASE. Thus, as to this contention, Brant has not met his burden, as the party opposing summary judgment, to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial," *see* FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka,* 122 F.3d at 562 *McLaughlin,* 50 F.3d at 511; *Beyerbach,* 49 F.3d at 1325, on the question of whether or not Brant was unable "to work at *any job* that reasonably fi[t] his ... background and training." Defendant Principal Life's Appendix, Exhibit 5 (Member Life Insurance, Accidental Death and Dismemberment Insurance, and Dependent Life Insurance Policy), Appendix at 78 (emphasis added).

Nor does Brant generate a genuine issue of material fact precluding summary judgment based on his contention that Principal Life improperly relied on the opinions of Dr. Levinson, who was not his

"primary" treating physician, in determining that he did not meet the applicable definition of "disability," instead of relying on the opinion of his "primary" treating physician, Dr. Harlan. First, the Eighth Circuit Court of Appeals has rejected the contention that the plan administrator should necessarily accord greater deference to the opinions of the claimant's treating physician. *See Marshall*, 258 F.3d at 842. As the Eighth Circuit Court of Appeals explained, "a treating physician's opinion does 'not automatically control, since the record must be evaluated as a whole.'" *Marshall*, 258 F.3d at 842 (quoting *Fletcher–Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1180 n. 3 (8th Cir. 2001)). The question of deference as between treating and non-treating physicians, therefore, depends upon whether the non-treating physician merely reviewed the claimant's medical records, or instead conducted his or her own physical examination, and the extent to which the physicians' opinions are consistent with or contrary to the record as a whole. *Id.*

While Brant argues that Dr. Levinson was not his "primary" physician, he does not argue that Dr. Levinson was just a non-treating physician or that Dr. Levinson merely reviewed his medical records without examining him before offering an opinion. Nor does Brant point to any evidence that Dr. Harlan, whom he describes as his "primary" physician, would have opined that he was "disabled" within the meaning of the "Coverage During Disability" provision of the Life Insurance Policy. To the contrary, as Principal Life points out, Brant responded to a discovery request for the factual basis of any contention that termination of his life insurance coverage was an abuse of discretion, in part, by stating that "[t]he release to work at Armour was signed by Dr. Harlan, my primary physician. That release *does not* state that I am disabled, only that I was under restrictions at that time." Defen-

dant Principal Life's Appendix, Exhibit 4 (Plaintiff's Response to Defendant Principal Life Insurance Company's First Set of Requests for Admissions, Request for Production of Documents and Interrogatories to Plaintiff), Appendix at 41 (emphasis added). Thus, as to this contention, Brant has also failed to meet his burden, as the party opposing summary judgment, to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka*, 122 F.3d at 562 *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325.

Nor was it an abuse of discretion for the defendants to terminate Brant's life insurance coverage when the time for converting the life insurance policy had passed. There is no genuine issue of material fact that, prior to that time, Brant had not contested the determination to terminate his coverage in the manner indicated in the August 10, 1995, letter, nor had he exercised the "conversion" rights that letter explained that he had. Brant's contention that he never received a 30–day notice of the termination of his coverage is also incorrect as a matter of law. The August 10, 1995, letter, which Brant admits he received, plainly notified him that his coverage would terminate unless he exercised his right, within 31 days of the date of the letter, to convert the policy to an individual policy. *See* Defendant Principal Life's Appendix, Exhibit 4 (Letter of August 10, 1995), Appendix at 44.

The court concludes that, as a matter of law, the defendants' decision to terminate Brant's life insurance coverage was not an abuse of discretion.

### 2. Bars to termination of coverage

Brant nevertheless contends that the April 17, 1995, letter barred the termination of his life insurance coverage and instead compels ASE to pay for such coverage. ASE has characterized this contention as a claim that ASE "misrepresented" his right to continued coverage. Principal Life has characterized this contention as an assertion of "estoppel" of Principal Life's right to terminate the life insurance coverage pursuant to the terms of the life insurance plan.

### a. Promissory estoppel

 Principal Life's characterization of Brant's claim may more nearly embody Brant's own argument, which could reasonably be characterized as a contention that termination of his life insurance coverage was contrary to a promise in the April 17, 1995, letter that his life insurance coverage would continue, without further contributions on his part, if he was approved for LTD. However, "an ERISA plaintiff may not use estoppel to recover money damages for reliance on an extra-contractual promise or representation." *Houghton v. SIPCO, Inc.*, 38 F.3d 953, 958 (8th Cir.1994) (citing *Slice v. Sons of Norway*, 34 F.3d 630, 632 (8th Cir.1994)). As the Eighth Circuit Court of Appeals also explained in *Houghton*, "ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise." *Id.* (citing *National Cos. Health Benefit Plan v. St. Joseph's Hosp.*, 929 F.2d 1558, 1572 & n. 13 (11th Cir.1991); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1163–64 (3d Cir.1990); *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2nd Cir.1988); and *Anderson v. John Morrell & Co.*, 830 F.2d 872, 877 (8th Cir.1987)). A promise to provide life insurance coverage at no cost to Brant if he was approved for LTD would plainly be contrary to the plan's terms regarding "Coverage During Disability," which defined "disability" in a manner different from the definition applicable to LTD, and thus, would constitute an informal amendment to the plan. *See id.* Also, the April 17, 1995, letter certainly cannot be the basis for any estoppel as to basic life insurance, where the letter was "merely silent with regard to [such coverage]." *Id.* "Thus, even if estoppel may give rise to an ERISA claim—an open issue in this Circuit—[this court] fail[s] to see how [Brant] may recover lifetime [life insurance coverage without cost] under an estoppel theory" based on a promise of eligibility for coverage that is contrary to the terms of the policy. *Id.*

Finally, Principal Life is not, as a matter of law, the proper defendant on any such "estoppel" claim, because the record demonstrates beyond dispute that it was a representative of ASE, ASE's Manager of Human Resources, Daryl Johnson, not any representative of Principal Life, who authored the April 17, 1995, letter containing the purported promise to provide life insurance coverage without contributions from Brant if he was approved for LTD. Plaintiff's Appendix in Support of Resistance to Defendants' Motions for Summary Judgment, Exhibit 9. To the contrary, Principal Life identified the *correct* standard for determining Brant's eligibility for continued insurance coverage during disability in the August 10, 1995, letter from its claim specialist. Defendant Principal Life's Appendix, Exhibit 4 (Letter of August 10, 1995), Appendix at 43–44.

Thus, both defendants are entitled to summary judgment on Brant's "promissory estoppel" theory—Principal Life because it made no "promise" upon which the claim could be founded, and both defendants because the purported promise would have constituted an impermissible informal amendment to the plan terms.

### b. Misrepresentation

Even if Brant's claim is construed as a claim that ASE "misrepresented" his eligibility for insurance coverage without contribution, ASE contends that such a claim must fail as a matter of law here. ASE contends, in the first instance, that such a claim is time-barred, under the applicable three-year statute of limitations for breach-of-fiduciary-duty claims, because Brant knew or should have known of the alleged misrepresentation in the April 17, 1995, letter not later than August 10, 1995, when Principal Life informed Brant of the proper standard for determining his eligibility for insurance coverage without contribution during his disability, but Brant did not file suit until September 14, 1998. In any event, ASE contends that any "misrepresentation" of Brant's eligibility in the April 17, 1995, letter was not material, apparently because ASE contends that the letter only "inartfully" stated that Brant's contributions for insurance would cease if he was "disabled." ASE also contends that Brant has not generated any genuine issue of material fact that the "misrepresentation" induced him to do anything. ASE's arguments concerning the statute of limitations also at least imply that Brant could not reasonably have relied on any misrepresentation in the April 17, 1995, letter once he received the correct eligibility information in the August 10, 1995, letter.

Again, the court concludes that, even if Brant's claim is properly characterized as some kind of "misrepresentation" claim, Principal Life is not, as a matter of law, the proper defendant on such a claim. As explained with reference to a "promissory estoppel" claim, the record demonstrates beyond dispute that the representation on which this claim hangs was made by ASE's Manager of Human Resources, Daryl Johnson, not any representative of Principal Life, while Principal Life identified the

*correct* standard for determining Brant's eligibility for continued insurance coverage during disability in the August 10, 1995, letter from its claim specialist. Thus, Principal Life is entitled to summary judgment on Brant's sole remaining claim, however that claim is characterized.

Turning to ASE's motion for summary judgment on a "misrepresentation" claim, although this court has not found a decision of the Eighth Circuit Court of Appeals that is on point, decisions of other Circuit Courts of Appeals provide some guidance on the causes of action under ERISA arising from alleged misrepresentation of plan terms or eligibility by a plan administrator or fiduciary. Specifically, the Third Circuit Court of Appeals has recognized "that an employer can be liable under ERISA in its fiduciary capacity for making affirmative misrepresentations on breach of fiduciary duty and equitable estoppel theories." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir.1994). The court will consider whether Brant has generated genuine issues of material fact under either theory.

■ *i. Equitable estoppel.* In its consideration of an "estoppel" claim founded on alleged misrepresentation by a plan fiduciary, the Seventh Circuit Court of Appeals explained that such a claim has the following elements: "(1) knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to [his] detriment." *See Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999). However, the court also explained that such "[a] claim will *not* lie for every false statement reasonably and detrimentally relied upon by an unwitting plaintiff." *See id.* (emphasis in the original). Rather, as the Seventh Circuit Court of Appeals has explained,

"[A]rguments that negligent misrepresentations 'estop' sponsors or administrators from enforcing the plans' written terms have been singularly unsuccessful." [Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co., 990 F.2d 925, 926–27 (7th Cir.1993);] [s]ee also Pohl [v. National Benefits Consultants, Inc.], 956 F.2d [126,] 127 [(7th Cir.1992)]; Vershaw v. Northwestern Nat'l Life Ins. Co., 979 F.2d 557, 559 (7th Cir.1992) (refusing to estop insurer where basis for estoppel was "innocent" error very similar to the one before us here). Thus, "[t]o the extent that the common law will sometimes hold parties to the terms of a misleading representation for no reason other than the circumstance that such a misleading representation was made, such is not the common law of ERISA in this Circuit." Thomason [v. Aetna Life Ins. Co.], 9 F.3d [645,] 649 [(7th Cir.1993)].

Coker, 165 F.3d at 586.

In Coker, the court rejected the plaintiff's estoppel claim based on misrepresentation, affirming the district court's summary judgment ruling, because, even assuming the plaintiff detrimentally relied on written representations from her spouse's former employer that she had insurance coverage, based on insurance cards received in the mail more than a year after her spouse's employment ceased, that reliance was not "reasonable," "in light of her easy access to convenient ways of ascertaining the true facts about her medical coverage." Id. The court also held that any reliance on supposed representations of coverage, under the circumstances, was "too far-fetched to believe," because "it defies common sense to think that a company for which one was not presently working, that was not paying a current wage or salary, and that had (as of then) made no promise of reinstatement, would continue indefinitely to afford health coverage for

the spouse of a former employee," and because the insurer had made specific disclaimers of any judgment about eligibility or coverage when it provided prior certification of the plaintiff's hospitalizations. Id. The court also rejected the claim, "because there was no hint that [the employer] intentionally set out to mislead her or anyone else." Id. Rather, the court found that, "[a]t worst, [the employer] was guilty of bureaucratic sloppiness when it did not delete the [plaintiffs] from the rolls of active health plan participants after 12 months had elapsed and instead sent them new prescription and insurance benefit cards." Id. Finally, the court concluded,

As we mentioned earlier, the recognition of negligent misrepresentations as a basis for estoppel claims is inconsistent with the policy concern about not undermining the actuarial soundness of an ERISA plan. Sound policy aside, the equities do not favor Susan: TWA paid for its mistakes, insofar as it provided free health insurance for her for a substantially longer period of time than it was required to do, and we understand that it is not trying to recoup anything for that period. It just wanted to turn off the spigot when it learned of the mistake, and we hold that it was entitled to do so.

Coker, 165 F.3d at 586–87.

Similarly, in Curcio, the Third Circuit Court of Appeals concluded that, to prevail on an equitable estoppel claim based on misrepresentation, "an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." Curcio, 33 F.3d at 235. It is the last of these elements that appears to this court to be analogous to the requirements in Coker that the plaintiff do more than show "neg-

ligent misrepresentation," and must instead show that the fiduciary intended to mislead the plaintiff, that the "misrepresentation" was more than "bureaucratic sloppiness," and that the balance of equities favored relief to the plaintiff. *See Coker*, 165 F.3d at 586–87.

■ Turning to consideration of the pertinent elements, the court finds, first, that ASE's representative's representation in the April 17, 1995, letter of what would make Brant eligible for life insurance coverage without further contributions from him—his approval for LTD, *see* Plaintiff's Appendix in Support of Resistance to Defendants' Motions for Summary Judgment, Exhibit 9—was plainly wrong in light of the applicable definition of "disability" triggering continuation of coverage without contribution under the Life Insurance Policy. *See* Defendant Principal Life's Appendix, Exhibit 5 (Member Life Insurance, Accidental Death and Dismemberment Insurance, and Dependent Life Insurance Policy), Appendix at 78. However, Brant has not generated any genuine issue of material fact that ASE made a "knowing" misrepresentation of his eligibility for coverage without contributions. Indeed, the record evidence suggests only that ASE's representative made a mistake. *Cf. Coker*, 165 F.3d at 586. Thus, Brant has not made a sufficient showing of an essential element of this claim with respect to which he has the burden of proof; therefore, ASE is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d at 1492. Nevertheless, the court will consider the record evidence on other elements as well.

Notwithstanding ASE's conclusory assertions that it made no "material" misrepresentation, just an "inartful" statement that if Brant was "disabled," his contributions for LTD and supplemental life insur-ance would cease, the court concludes that there is no genuine issue of material fact that ASE's representation *was* material. A representation is "material" where, for example, "it establishes a benefit of the plan." *See Curcio*, 33 F.3d at 237. Just as a representation that "establishes a benefit of the plan" is "material," this court concludes that, as a matter of law, a representation that establishes the standard for determining the plaintiff's eligibility for a benefit, like the representation at issue in the April 17, 1995, letter, must also be "material."

Even so, the fact that the plaintiff has established one element of his claim as a matter of law does not establish his right to trial on that claim where he has failed to generate genuine issues of material fact on other elements. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of any one essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d at 1492. Even though Brant has failed to generate a genuine issue of material fact on the "knowing misrepresentation" element, the court will continue its consideration of other elements of the claim.

The "reliance" element of an ERISA "breach of fiduciary duty" claim based on misrepresentation "has two subfactors: reasonableness and injury." *Curcio*, 33 F.3d at 237; *and compare Coker*, 165 F.3d at 585 (stating as two separate elements "reasonable reliance on that misrepresentation by the plaintiff" and that the reliance was "to [his] detriment"). Although the court disagrees with ASE's contention that there are no genuine issues of material fact that Brant did not rely to his detriment on the April 27, 1995, representation,

the court agrees that, as a matter of law, Brant's reliance on the representation was not reasonable.

The "detriment" or "injury" aspect of reliance examines, for example, whether the plaintiff "g[ave] up an opportunity to accommodate [his] insurance needs through [another source] because of [his] reasonable reliance on the [administrator's] representation." *Curcio,* 33 F.3d at 237. Here, a reasonable reading of the record is that Brant gave up the opportunity to convert his group life insurance to an individual insurance policy, as suggested in the August 10, 1995, letter *from Principal Life,* because he believed that ASE had made a different representation about coverage without contributions in the April 17, 1995, letter. Thus, there are genuine issues of material fact as to whether Brant relied to his detriment on the April 17, 1995, letter.

However, that reliance was not "reasonable" as a matter of law. The *Coker* decision suggests that reliance is not "reasonable" if the plaintiff had "easy access to convenient ways of ascertaining the true facts" about coverage, or if any reliance is "too far-fetched to be believed." *Coker,* 165 F.3d at 586. Here, Brant's reliance on ASE's statement of the standard for determining his eligibility for coverage without contributions was not "too far-fetched to be believed," at least not initially. The issue of coverage here is so completely different from the one in *Coker* that it was not, as a matter of law, *unreasonable* for Brant to rely initially on ASE's statement he would be eligible for insurance coverage if he was approved for LTD, although it was patently unreasonable for the plaintiff in *Coker* to think that she was entitled to insurance coverage through an employer more than a year after her spouse's employment ended. *See id.* Nor was it necessarily unreasonable for Brant to continue in his mistaken reliance on the representation of the standard for eligibility in the April 17, 1995, letter after he received a *correct* statement of the standard in Principal Life's August 10, 1995, letter, because he may have reasonably believed that ASE was making an extra-contractual representation that it would pay his contributions for insurance if he was approved for LTD, even if the plan proper required a different showing of "disability" to establish his eligibility.

However, it was *not* reasonable for Brant to continue in that reliance, as a matter of law, "in light of [his] easy access to convenient ways of ascertaining the true facts about [continuation of his life insurance] coverage," *see Coker,* 165 F.3d at 586, and, this court concludes, even less reasonable to continue to rely on a representation when informed by qualified representatives that the April 17, 1995, representation was wrong. While there is no direct evidence in the record that Brant actually contacted ASE to clear up whether a mistake had been made in the April 17, 1995, letter, even after Principal Life's representative referred Brant to ASE for clarification of the matter, there are inferences that Brant did have further contact with ASE about his life insurance coverage. For example, Brant has submitted a copy of a letter he sent to ASE on February 21, 1998, stating that he was "working with" a representative of Principal Life "pertaining to my life insurance in which your co [sic] agreed to pay." *See* Plaintiff's Appendix, Exhibit 27. There is also a reference in a letter from a Principal Life representative to Brant dated April 13, 1998, stating, "Our records do show that in a letter addressed to the Iowa Insurance Commissioner you stated you were told by Daryl Johnson that your Life Insurance was not being continued." *See id.,* Exhibit 30, p. 2. Notwithstanding that Brant was not entitled to continuation of his life insurance coverage without contribution,

that letter from Principal Life also provided Brant with yet another opportunity to convert his group life insurance to an individual policy almost three years after Principal Life had terminated Brant's life insurance coverage under the group policy. *See id.* Brant apparently did not accept this renewed opportunity to convert his life insurance policy. Thus, notwithstanding that both Principal Life and ASE representatives had explained that the representation in the April 17, 1995, letter was wrong, Brant persisted in reliance on that incorrect representation and refused a reasonably available opportunity to secure insurance coverage. Such obstinate reliance on a representation confirmed to be incorrect simply was not reasonable as a matter of law.

Moreover, in light of the undisputed facts in the record, Brant cannot generate a genuine issue of material fact that there are "extraordinary circumstances" justifying an estoppel. *See Curcio*, 33 F.3d at 235 (third element); *cf. Coker*, 165 F.3d at 586–87 (considering analogous requirements that the plaintiff do more than show "negligent misrepresentation," and must instead show that the fiduciary intended to mislead the plaintiff, that the "misrepresentation" was more than "bureaucratic sloppiness," and that the balance of equities favored relief to the plaintiff). As to "extraordinary circumstances," in *Curcio*, the Third Circuit Court of Appeals noted that it had "not specifically defined this term, rather we rely on caselaw to establish its parameters." *Curcio*, 33 F.3d at 237. It is apparent, however, that the number of times the misrepresentation is "repeated" and "compounded," and whether the representations are part of a "roller coaster" of inconsistent positions are factors that may enter into whether or not the circumstances are "extraordinary." *See id.* at 238. In a subsequent decision, also determining "extraordinary circumstances" in light of caselaw, the Third Circuit Court of Appeals suggested that "a showing of affirmative acts of fraud or similarly inequitable conduct by an employer," a "network of misrepresentations that arises over an extended course of dealing between the parties," or "the vulnerability of the particular plaintiffs" may be required to sustain such an estoppel claim, but, in any event, "a plaintiff must do more than merely make out the 'ordinary elements' of equitable estoppel under ERISA." *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir.1996), *cert. denied*, 522 U.S. 913, 118 S.Ct. 297, 139 L.Ed.2d 228 (1997). Plainly, under either *Coker* or *Kurz*, estoppel claims cannot be based on "simple ERISA reporting errors or disclosure variations, such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents." *Kurz*, 96 F.3d at 1553; *see also Coker*, 165 F.3d at 586–87 (requiring "intent to mislead," not just "bureaucratic sloppiness," and weighing the equities between the parties).

Brant cannot generate any genuine issues of material fact on this element. First, as the court commented above, the record is devoid of evidence of a "knowing misrepresentation" or any showing of "affirmative acts of fraud." At worst, ASE's Human Resources Manager made a sloppy mistake or "simple reporting error" in defining the circumstances that would make Brant eligible for continuation of Brant's life insurance coverage during disability at variance with what the plan actually required. *See Kurz*, 96 F.3d at 1553; *see also Coker*, 165 F.3d at 586–87 (requiring "intent to mislead," not just "bureaucratic sloppiness," and weighing the equities between the parties). Moreover, there is no evidence of a "network of misrepresentations" or a "compounding" and "repeating" of the misrepresentation in the April 17, 1995, letter. *See id.* Rather, prior to expiration of the opportunity to secure in-

dividual life insurance, Principal Life provided Brant with the correct information about eligibility, and, at some point, ASE also confirmed that the conflicting representation in the April 17, 1995, letter was wrong. Finally, as a matter of law, the balance of equities does not favor estoppel. *See Coker,* 165 F.3d at 587. In *Coker,* the court found that the equities did not favor an estoppel where the employer simply tried to "turn off the spigot" when it learned of the mistake. *Id.* Here, Principal Life also attempted to resolve the mistake—which had actually been made by ASE—in a reasonable fashion by permitting Brant to convert his life insurance coverage to an individual policy almost three years after Brant had passed up his first opportunity to do so and long after the terms of the plan would have required such a conversion. Brant's rejection of that offer forecloses his equitable estoppel claim.

Therefore, both defendants are entitled to summary judgment on Brant's claim construed as a claim for equitable estoppel based on misrepresentation.

■■■ **ii. Breach of fiduciary duty.** As noted above, a claim of misrepresentation by a plan administrator may also be construed as a claim for breach of fiduciary duty under ERISA. *See Curcio,* 33 F.3d at 235. Various courts have held that, " '[W]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries.' " *See, e.g., Dev-*

lin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 88 (2d Cir.2001) (quoting *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 57 F.3d 1255, 1264 (3d Cir.1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1316, 134 L.Ed.2d 469, 470 (1996)). This is so, because "a fiduciary … has 'a duty to deal fairly and honestly with its beneficiaries.' " *See Devlin,* 274 F.3d at 88 (quoting *Ballone v. Eastman Kodak Co.,* 109 F.3d 117, 124 (2d Cir.1997)). " 'Put simply, when a plan administrator speaks, it must speak truthfully.' " *Curcio,* 33 F.3d at 238 (quoting *Fischer v. Philadelphia Elec. Co.,* 994 F.2d 130, 135 (3d Cir. 1993), *cert. denied,* 510 U.S. 1020, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993)). Where a trier of fact could find that there was a fiduciary duty and that the plan administrator breached that duty by misrepresenting plan terms, "the district court should permit a trier of fact to evaluate [the administrator's] communications with [the] plaintiff[ ] for affirmative misrepresentations regarding plan benefits and for failure to provide completely accurate plan information." *Devlin,* 274 F.3d at 89.[2]

■■■ The Third Circuit Court of Appeals recently concluded that, in order to make out a breach of fiduciary duty claim based on misrepresentation of eligibility for or terms of an ERISA plan, "a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Daniels v. Thomas & Betts Corp.,*

**2.** If a plaintiff prevails on such a claim, there is no clear agreement on the relief the court can provide. For example, in *Devlin,* the Second Circuit Court of Appeals held that the appropriate relief is equitable relief fashioned by the court. *See Devlin,* 274 F.3d at 89–90. In *Curcio,* the Third Circuit Court of Appeals

held that the appropriate relief was to hold the fiduciary liable for the amount of supplemental accidental death and dismemberment insurance due the plaintiff under the policy the administrator had misrepresented. *See Curcio,* 33 F.3d at 238–39.

263 F.3d 66, 73 (3d Cir.2001) (citing *In re Unisys Corp. Retiree MEd. & Ben. "ERISA" Litig.*, 242 F.3d 497, 505 (3d Cir.2001), and *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir.2000)). Thus, the "extraordinary circumstances" element of an equitable estoppel claim under ERISA based on misrepresentation of plan terms or eligibility—on which this court found no genuine issue of material fact in this case—is not an element of a breach-of-fiduciary-duty claim based on such a misrepresentation.

◼ Nevertheless, for the same reasons the court rejected ASE's arguments as to lack of "materiality" or "detrimental reliance" with regard to equitable estoppel, the court also here rejects similar contentions regarding those elements of a breach-of-fiduciary-duty claim. In *Curcio*, which considered both "equitable estoppel" and "breach of fiduciary duty" claims under ERISA based on an alleged misrepresentation about the plan by a fiduciary, the court concluded that, where it had found the alleged misrepresentation was "material" for purposes of the "equitable estoppel" claim—because "it establishes a benefit of the plan," *see Curcio*, 33 F.3d at 237—it was also "material" for purposes of the "breach of fiduciary duty" claim, and it was "a short step" from materiality of the misrepresentation "to conclude that [the fiduciary] breached its fiduciary duty." *Curcio*, 33 F.3d at 238. In *Daniels*, the Third Circuit Court of Appeals explained that "a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making a decision regarding his benefits under the ERISA plan." *Daniels*, 263 F.3d at 73. The court explained, further, that " '[s]ummary judgment on the "question of materiality" is appropriate only if "reasonable minds cannot differ." ' " *Id.* (quoting *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.1993), in turn quoting *TSC Indus., Inc. v. Northway,*

*Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). Again, just as a representation that "establishes a benefit of the plan" is "material," *see Curcio*, 33 F.3d at 237, this court concludes that, as a matter of law, a representation that establishes the standard for determining the plaintiff's eligibility for a benefit, like the representation at issue in the April 17, 1995, letter, must also be "material." Moreover, this is so, because a misrepresentation of the standard for determining eligibility for a benefit is precisely the sort of misrepresentation that creates "a substantial likelihood" that "a reasonable employee" would be "misled" "in making a decision regarding his benefits under the ERISA plan." *Daniels*, 263 F.3d at 73. At a minimum, "reasonable minds" could differ on the "question of materiality" of such a misrepresentation, making summary judgment inappropriate on this element. *Id.* Also, a reasonable reading of the record is that Brant gave up the opportunity to convert his group life insurance to an individual insurance policy, as suggested in the August 10, 1995, letter from Principal Life, because he believed that ASE had made a different representation about coverage without contributions in the April 17, 1995, letter. Thus, there are genuine issues of material fact as to whether Brant relied to his detriment on the April 17, 1995, letter.

Nevertheless, Brant's breach-of-fiduciary-duty claim based on misrepresentation also fails on one or more of the same grounds that foreclosed his equitable estoppel claim based on misrepresentation. First, in *Devlin*, the Second Circuit Court of Appeals recognized that a breach-of-fiduciary-duty claim based on misrepresentation would lie where the plan administrator made an "affirmative misrepresentation." *Devlin*, 274 F.3d at 88; *accord Curcio*, 33 F.3d at 235 ("an employer can be liable under ERISA in its fiduciary

capacity for making *affirmative misrepresentations* on [a] breach of fiduciary duty ... theor[y]") (emphasis added). For the reasons explained above, the record is devoid of evidence of a "knowing misrepresentation" or any showing of "affirmative acts of fraud." At worst, ASE's Human Resources Manager made a sloppy mistake or "simple reporting error" in defining the circumstances that would make Brant eligible for continuation of his life insurance coverage during disability at variance with what the plan actually required.

Another ground for holding that summary judgment in the defendants' favor is appropriate on this claim is that Brant's detrimental reliance must also be "reasonable." *See Daniels,* 263 F.3d at 76 ("If the statement creates a substantial risk of misleading a *reasonable* employee, it is foreseeable that an employee will be misled to his detriment. That foreseeability and *reasonable reliance* by a beneficiary are all that is required.") (emphasis added). Although a reasonable employee might initially be misled by the erroneous statement in the April 17, 1995, letter of the eligibility requirement for continuation of coverage during disability in terms of whether or not he had been approved for LTD, under the undisputed facts of this case, Brant could not reasonably have relied on that representation when informed by qualified representatives of both Principal Life and ASE that the April 17, 1995, representation was wrong. Brant obstinately, not reasonably, persisted in reliance on that incorrect representation and refused a reasonably available opportunity to secure insurance coverage. Such obstinate reliance on a representation confirmed to be incorrect simply was not reasonable as a matter of law.

Moreover, even if Brant's breach-of-fiduciary-duty claim based on misrepresentation were otherwise viable, the court must agree with ASE that it is time-barred, although the court does not agree with ASE's precise formulation of when the time for Brant's claim began to run. As the Eighth Circuit Court of Appeals explained in *Brown v. American Life Holdings, Inc.,* 190 F.3d 856 (8th Cir.1999), "ERISA contains an express statute of limitations that bars breach of fiduciary duty claims after the earlier of six years from the breach or three years from the date that plaintiff acquires actual knowledge of the breach." *Brown,* 190 F.3d at 859 (citing 29 U.S.C. § 1113). Moreover, in *Brown,* the Eighth Circuit Court of Appeals "agree[d] with interpretive principles developed with substantial unanimity by our sister circuits" to hold that, "[b]ecause the statute requires 'actual knowledge *of the breach or violation,'* a plaintiff must have 'actual knowledge of all material facts necessary to understand that some claim exists.'" *Id.* (quoting *Gluck v. Unisys Corp.,* 960 F.2d 1168, 1177 (3d Cir. 1992)) (emphasis in the original). In the decision on which the Eighth Circuit Court of Appeals relied for this explanation, *Gluck,* the Third Circuit Court of Appeals continued by stating that "knowledge of all material facts necessary to understand that some claim exists ... could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Gluck,* 960 F.2d at 1177; *see also Kurz,* 96 F.3d at 1551 (quoting this portion of *Gluck* as well as the portion quoted by the Eighth Circuit Court of Appeals in *Brown*).

ASE contends that the time for Brant's breach-of-fiduciary-duty claim based on misrepresentation began to run on August 10, 1995, when he received the *correct* information regarding eligibility requirements for continuation of coverage during disability, but his complaint was not filed until more than three years later, on September 14, 1998. In the court's view, how-

ever, because "detrimental reliance" is an element of this breach-of-fiduciary-duty claim based on misrepresentation, *see, e.g., Daniels*, 263 F.3d at 73, and the statute of limitations does not begin to run until a plaintiff has " 'actual knowledge of all material facts necessary to understand that some claim exists,' " *Brown*, 190 F.3d at 859 (quoting *Gluck*, 960 F.2d at 1177), including "knowledge of a transaction's harmful consequences, or even actual harm," *Gluck*, 960 F.2d at 1177; *see also Kurz*, 96 F.3d at 1551, the limitations period did not begin to run in this case until Brant relied on the misrepresentation to his detriment. That point was not reached until Brant decided to forego converting his group life insurance to an individual policy, as offered in the August 10, 1995, letter, in reliance on the April 17, 1995, representation about eligibility for continuation of coverage without further contributions, *i.e.*, 31 days after August 10, 1995, when Brant's right to convert expired. *See* Defendant Principal Life's Appendix, Exhibit 4 (Letter of August 10, 1995), Appendix at 44. Although this conclusion moves the deadline closer to the date on which Brant filed his claim, that deadline had nevertheless expired on September 10, 1998, a few days before Brant filed his complaint in Iowa District Court for Cerro Gordo County. Brant has not offered any ground for equitably tolling the limitations period, so that his breach-of-fiduciary-duty claim based on misrepresentation is also barred on timeliness grounds.

### III. CONCLUSION

Both Principal Life and ASE are entitled to summary judgment on Brant's only remaining claim, his claim under ERISA for reinstatement of his life insurance benefits coverage. The termination of Brant's life insurance policy was not an abuse of discretion, as a matter of law, because there was substantial evidence supporting Principal Life's determination that Brant was not "disabled" within the meaning of the "Coverage During Disability" provisions of the Group Life Insurance Policy.

Moreover, the alleged misrepresentation by ASE of the standard of eligibility for continuation of such benefits without contribution from Brant does not bar termination of Brant's insurance coverage. Construed as a claim for "promissory estoppel," the court concludes that the claim fails, because informal amendment to a plan by estoppel—as would be required to treat the representation about eligibility in the April 17, 1995, letter as binding—is not permissible under ERISA. Such a claim would not lie against Principal Life in any event, because it is undisputed that ASE, not Principal Life, made the erroneous representation in the April 17, 1995, letter. The claim also fails when construed as a claim of either "equitable estoppel" or "breach of fiduciary duty" based on misrepresentation of eligibility by a plan administrator, owing to Brant's inability to generate genuine issues of material fact on certain elements of such claims, as explained more fully above. Furthermore, a "breach of fiduciary duty" claim is time-barred.

THEREFORE,

1. The March 14, 2002, motion by plaintiff Carl Brant to quash ASE's Exhibit A in support of its summary judgment motion is **denied**, because Rule 30 of the Federal Rules of Civil Procedure does not require either notice of who will be present at a deposition or that the party conducting the deposition must provide a free copy of the transcript to the deponent.

2. The December 31, 2001, motion for summary judgment by defendant Armour Swift–Eckrich (ASE) is **granted** as to the remaining claim before the court, Count II of Brant's complaint. Judgment shall enter accordingly.

3. The January 2, 2002, motion for summary judgment by defendant Principal Life and Disability Insurance Company (Principal Life) is also **granted** as to the remaining claim before the court, Count II of Brant's complaint. Judgment shall enter accordingly.

4. The trial in this matter set to begin on April 29, 2002, is **cancelled**.

**IT IS SO ORDERED**.