# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-3838WM

———————

Terry Clapp,

      Appellee,

v.

Citibank, N.A. Disability Plan (501),

      Appellant.

  On Appeal from the United
  States District Court
  for the Western District
  of Missouri.

———————

Submitted: June 14, 2001
Filed: August 22, 2001

———————

Before MORRIS SHEPPARD ARNOLD and RICHARD S. ARNOLD, Circuit Judges, and BATAILLON,[1] District Judge.

———————

RICHARD S. ARNOLD, Circuit Judge.

This action arises under 29 U.S.C. § 1132(a)(1)(B), part of the Employee Retirement Income Security Act of 1974 (as amended), 29 U.S.C. §§ 1001-1416 (ERISA). Citibank, N.A. Disability Plan (501) ("Citibank") appeals the District Court's order and judgment in favor of Terry Clapp. Citibank contends that the Court erred in

———————

[1]The Hon. Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

holding that Citibank's plan administrator abused its discretion in denying plaintiff long-term disability benefits under its employee welfare plan. We agree and reverse.

I.

Terry Clapp was a bill collector for Citibank and a participant in its employee benefits plan. Aetna Insurance Company, the plan's Claims Administrator, determined benefit eligibility. The plan defines disability as

> a mental or physical condition which the Claims Administrator/Fiduciary determines:
>
> (i) prevents the Participant from performing each and every material duty pertaining to his or her regular occupation (and after 24 consecutive months of such condition prevents the participant from engaging in each and every occupation or employment for wage or profit for which Employee is reasonably qualified by reason of education, training or experience or may reasonably become qualified.)

Appendix of Appellant (App.) at 76-77.

Plaintiff was initially certified for disability on November 10, 1993. She complained of incapacitating nerve ending pain, pain across her shoulders and back, pain radiating down her arms, and tightness in her chest and throat. On November 22, 1993, Dr. Feder, plaintiff's primary care physician, reported that he had not made a specific diagnosis, and that an MRI revealed brain irregularities which most likely resulted from a microvascular cause. The next day, Dr. Feder reported to Aetna that plaintiff had complained of leg pain, but the orthopedic work-up was negative. Dr. Hopewell, a neurologist, informed Aetna that he found no other neurological symptoms. On December 3, 1993, Dr. Feder informed Aetna that plaintiff could return to work. Plaintiff was scheduled to return to work on December 12, 1993. She attempted to return to work but was unable to do so.

-2-

On February 4, 1994, Dr. Feder diagnosed plaintiff with nephrotic syndrome,[2] which included symptoms of weakness, edema, weight gain, lower extremity pain, confusion, nausea, and bilateral pleural effusion[3]. On February 11, 1994, Dr. Feder requested that Aetna certify plaintiff as disabled due to her nephrotic syndrome for at least thirty days. On February 17, Dr. Lynch, a neurologist, examined plaintiff and expressed the view that she had a kidney problem and possible collagen vascular disease.[4] On March 4, 1994, a nurse at Aetna spoke with Dr. Huseman, plaintiff's nephrologist. The nurse's notes from the conversation indicate that plaintiff's nephrotic syndrome had been resolved, and that Dr. Huseman would not certify her disabled because of loss of kidney function. On March 14, 1994, Dr. Lynch reported that plaintiff suffered from pain in her hips down to her toes, shortness of breath when walking distances, and an inability to climb stairs. Dr. Lynch tentatively diagnosed plaintiff with collagen vascular disease, mild peripheral neuropathy, and lupus. Dr. Lynch requested that Aetna certify plaintiff as disabled for an additional six months, which was done.

---

[2]A condition, caused by kidney disease, marked by severe edema (swelling), proteinuria (protein in the urine), low albumin in the blood, and a susceptibility to infections.

[3]The escape of fluid from the blood vessels or lymphatic system into both sides of the membrane enveloping the lungs and lining the walls of the cavity that contains them.

[4]Collagen is a tough, glue-like protein that represents 30 per cent. of the body protein and shapes the structure of tendons, bones, and connective tissues. Malfunctioning of the immune system can affect blood vessels which in turn affects the connective tissues.

On April 6, 1994, plaintiff saw Dr. Stechschulte, a rheumatologist, and reported symptoms consistent with congestive heart failure, including cardiomyopathy (disease of the heart muscle). Dr. Stechschulte informed Aetna that plaintiff suffered from diverticulosis and a "[right] pleural effusion of uncertain etiology."[5] App. at 97. Drs. Feder and Stechschulte reported to Aetna that plaintiff had mild generalized enlargement of the heart. App. at 98. On April 20, Dr. Meyers, a cardiologist, stated that plaintiff had only 20 per cent. of her heart function left and requested that she be placed on total permanent disability. Notes from June 23, 1994, suggest that plaintiff had cardiomyopathy and autoimmune disease, which most likely caused "musculo-skeletal pain in upper extremities & chest requiring [plaintiff] to take nitro." App. at 103. The same notes also indicated that plaintiff would not return to work because of the multiple diagnosis and symptoms. Id.

In January of 1995, Dr. Meyers told Aetna that plaintiff was not a candidate for a heart transplant and could never work again. In March of 1995, plaintiff underwent quadruple coronary artery bypass surgery. In April, Dr. Meyers reported to Dr. Feder that plaintiff was doing "quite well," that she no longer had angina, that she had begun to do household chores, and that she was able to walk short distances. App. at 176. In June, Dr. Meyers informed Dr. Feder that plaintiff had "reasonably recovered from her angina, coronary artery disease, and bypass grafting." App. at 181. He also stated that he encouraged her to "be as active as her [condition would] allow, and to indeed begin a regular walking program." Id. In fact, Dr. Meyers reported that plaintiff was to begin aquatic aerobics, and that he did not need to see her again unless either she or Dr. Feder desired. Id. On November 28, 1995, Dr. Feder informed Aetna that plaintiff continued to suffer from collagen vascular disease. Throughout all this time (mostly within the first 24 months after she left work), plaintiff continued to receive disability benefits.

---

[5]There was an escape of fluid into the right side of the membrane enveloping the lungs.

On February 5, 1996, Dr. Pascuzzo, Aetna's in-house medical director, conducted a "test change" review of plaintiff's file.[6] According to Aetna's records, Dr. Meyers was the "Disabling Physician" and Drs. Feder and Stechschulte were listed as "Secondary Physician." On February 9, Dr. Meyer informed Aetna that he was not currently "disabling" plaintiff, and that he had not seen her in six months. He suggested that Aetna contact Dr. Feder. Aetna did contact Dr. Feder, who stated that plaintiff was stable from a cardiac standpoint, and that he saw her monthly. He also stated that she complained of pain in the extremities when walking ten feet, but that he could not find any objective abnormalities on exam. Dr. Feder also informed Aetna that plaintiff was still diagnosed with collagen vascular disease, but that she could do a sedentary job that involved mostly sitting and gave her the opportunity to stand and stretch. Aetna attempted to speak with Dr. Stechshulte, but was unable to reach him because he was on sabbatical until June.

On February 9, 1996, Dr. Pascuzzo recommended that plaintiff be certified as disabled only through November of 1995, and denied certification after that date. Dr. Pascuzzo noted that plaintiff had gone through the "test change," and that Dr. Feder had said that she was not disabled. Aetna terminated plaintiff's benefits.

On April 1, 1996, Dr. Nabih I. Abdou, M.D., Ph.D., a rheumatologist, wrote a letter to Dr. Feder diagnosing plaintiff with fibromyalgia instead of collagen vascular disease. He also stated that the fibromyalgia was very disabling to her. On April 16, 1996, Dr. Gary Beauchamp, a cardiologist, sent a letter to Dr. Feder stating:

> [O]verall [plaintiff] has good blood supply to a large portion of the heart muscle even though there are some obstructions and one of the vein grafts has occluded. I recommended continued medical therapy. . . . I do think

---

[6]After the initial two years of disability, a claimant is eligible for long-term disability benefits only if her condition precludes her from performing any occupation for which she might be reasonably qualified.

she would qualify to begin a cardiac rehab program and we will give this a period of time and see if she will be able to return to the work force . . ..

App. at 139.

Plaintiff appealed Aetna's decision. Accompanying her appeal was a prescription note from Dr. Beauchamp dated April 11, 1996, which stated that plaintiff was disabled at that point and that her evaluation was in progress. She also submitted the April 1st letter from Dr. Abdou to Dr. Feder.

On May 8, 1996, while plaintiff's appeal was pending, Dr. Beauchamp sent a letter to Aetna enclosing copies of his April 16th letter sent to Dr. Feder. Dr. Beauchamp's May 8th letter stated, "We do continue with medical therapy. [Plaintiff] has significant coronary disease, some of which is not bypassed. I think she may very well continue having some angina . . . She has had a host of medical problems that should qualify her for disability." App. at 136.

On June 28, 1996, Aetna affirmed its initial denial of benefits, stating, "there is no medical basis for extending certification of disability. Dr. Feder feels that you can perform the duties of a sedentary position. . . . There is no indication that you are disabled from your position from a cardiac standpoint. While you may benefit from rehabilitation, this can be done concurrently with work." App. at 130.

Plaintiff filed this suit against Citibank under ERISA in District Court.[7] The case was submitted to the Court for trial on a stipulated record. Neither side offered additional evidence. The Court held that Aetna had abused its discretion in terminating plaintiff's benefits because there was "considerable evidence of multiple ailments being

---

[7]Plaintiff also advanced state-law claims, but they were preempted under ERISA and dismissed.

suffered by [plaintiff] and the opinions of a treating cardiologist and rheumatologist that [she] was disabled." Clapp v. Citibank, N.A. Disability Plan (501), No. 97-6019-SJ-W-8-BB, slip. op. at 9 (W.D. Mo., June 8, 2000). Citibank appealed.

## II.

### A. Standard of Review

First, we must determine whether the District Court applied the appropriate standard of review. The Court held that the plan gave the Claims Administrator discretionary authority to determine benefit eligibility. The Court also found that Aetna was the plan's Claims Administrator; therefore, the Court reviewed Aetna's decision for an abuse of discretion. On appeal, plaintiff contends that although the Court arrived at the correct result, it employed an incorrect standard. According to plaintiff, the Court should have reviewed Aetna's decision de novo because (1) Aetna was not the Claims Administrator, and (2) the plan did not grant the Claims Administrator discretionary authority to determine benefit eligibility. In the alternative, plaintiff argues that the Court should have applied a "sliding-scale" standard of review because Aetna's failure to make a proper investigation amounted to a procedural irregularity under Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998).

Whether or not a district court applied the appropriate standard of review to an administrator's decision under ERISA is reviewed de novo. Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 640 (8th Cir. 1997). The Supreme Court has held that an administrator's decision to deny benefits under an employee welfare plan is reviewed under a deferential standard if the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Here, the plan provides that the Committee[8] shall be the Administrator and Fiduciary "to control and manage the operation and administration of this Plan." App. at 85. According to the plan, the Committee has the authority "[t]o interpret and construe the provisions of the Plan and to finally decide any matters arising under the Plan." Id. The plan also allows the Committee to "delegate or allocate among its members or to others such of its authority under this Plan as it deems appropriate. Such delegation or allocation shall be made by action of the Committee taken in accordance with its rules at a duly convened meeting." Id. The plan further states that "[i]n accordance with [the previous delegation provision] the Committee shall designate a person(s) or entity(ies) to act as Claims Administrator/Fiduciary with authority to perform some or all of the following: (A) Determine eligibility for benefits and the amount thereof." Id.

First, plaintiff argues that since the plan requires that the Committee appoint a Claim Administrator "in accordance with its rules at a duly convened meeting," id. at 85, and there is no evidence in the record that Aetna was appointed in such a manner, Aetna cannot be the Claims Administrator. Therefore, its decision is not entitled to deference. We disagree. Whether Aetna is the Claims Administrator under the plan is a finding of fact which we review for clear error. Duffie v. Deere & Co., 111 F.3d 70, 72 (8th Cir. 1997) (standard of review). The District Court determined that Aetna was the Claims Administrator under the plan, Clapp, slip op. at 9, and this finding is not clearly erroneous. The parties agreed to submit this case to the Court upon a stipulated record. Paragraph four of the findings of fact submitted to the Court by the parties states that "Aetna administered the Plan under an Administrative Services contract." App. at 33. Thus, the record supports the Court's finding.

---

[8]The Committee is the United States Human Resources Policy Committee of Citibank, N.A.

Next, plaintiff argues that even if Aetna was the Claims Administrator, the plan afforded discretion to determine benefit eligibility to the Administrator (the Committee), not the Claims Administrator. Plaintiff asserts that since the plan does not expressly grant the Claims Administrator "discretionary" authority to determine benefit eligibility, the Court should not have applied a deferential standard of review. We do not agree. The plan defines disability as "a mental or physical condition which the Claims Administrator/Fiduciary determines." Id. at 76. We have recognized that similar language in a benefit plan gives the administrator of the plan discretionary authority. Finley v. Special Agents Mut. Benefit Assoc. Inc, 957 F.2d 617, 620 (8th Cir. 1992); Bounds v. Bell Atl. Enters. Flexible Long-Term Disability Plan, 32 F.3d 337, 339 (8th Cir. 1994) (pointing to "as determined by" language in Finley as "explicit discretion-granting language"). The plan language at issue here is sufficiently similar to that in Finley to foreclose de novo review.

Likewise, the Court did not err in declining to apply a "sliding-scale" standard of review. Plaintiff argues that in light of evidence of "multiple ailments, including substantial cardiac impairment" and the uncommon disease of fibromyalgia, along with opinions from two treating physicians that [plaintiff] was disabled," Appellee's Brief at 25, Aetna's failure to have either a cardiologist or rheumatologist review her claim demonstrated improper judgment which constituted a procedural irregularity under Woo. We think not.

A "sliding-scale" standard of review is appropriate when there is "material, probative evidence demonstrating that (1) a palpable conflict of interest or serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to [the claimant]." Barnhardt v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 588 (8th Cir. 1999); Woo, 144 F.3d at 1160. The plaintiff must also "show that the conflict or procedural irregularity has 'some connection to the substantive decision reached.' " Woo, 144 F.3d at 1161 (quoting Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996)).

-9-

"A claimant must offer evidence that 'gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim' for us to apply the less deferential standard." Heaser v. The Toro Co., 247 F.3d 826, 833 (8th Cir. 2001) (quoted case omitted).

In Woo, we held that the plaintiff's evidence of a procedural irregularity was sufficient to trigger the "sliding-scale" standard of review. Woo, 144 F.3d at 1161-62. In that case, there was evidence from two treating physicians that the plaintiff was disabled from scleroderma and that she had been disabled for some time. The plan administrator used an in-house medical consultant to review the plaintiff's claim and denied benefits. We held that the defendant "failed to use proper judgment by not having a Scleroderma expert review [Ms. Woo's] claim." Woo, 144 F.3d at 1161. We also held that there was a sufficient connection between this procedural irregularity and the administrator's adverse decision because the decision " 'was reached without reflection and judgment.' " Id. (quoting Buttram, 76 F.3d at 901).

The case before us is distinguishable. Here, there is evidence from plaintiff's own primary care physician that she is not disabled. Moreover, Aetna's decision to terminate benefits was not arbitrary or reached without reflection and judgment. The record shows that Aetna tracked plaintiff's medical history for two years, often calling to speak directly with her doctors. Furthermore, before making its determination, Aetna spoke with plaintiff's cardiologist, who would not "disable" her, and her primary care physician, who, we note, had previously believed she was disabled. Aetna also attempted to consult Dr. Stechschulte, plaintiff's rheumatologist, but was unable to reach him. Thus, we do not think a less deferential standard of review is warranted here, and the Court's refusal to apply the "sliding-scale" standard of review was not error.

## B. Aetna's determination

Next, we consider whether the District Court erred in holding that Aetna's decision to deny plaintiff long term disability benefits under the plan was an abuse of discretion. We think that it did.

"We review the district court's application of the deferential standard de novo." <u>Cash</u>, 107 F.3d at 641. Under the abuse of discretion standard, we look to see whether Aetna's decision was reasonable. <u>Ibid</u>. In doing so, we must determine whether the decision is supported by substantial evidence, "which is more than a scintilla, but less than a preponderance." <u>Sahulka v. Lucent Technologies, Inc.</u>, 206 F.3d 763, 767-68 (8th Cir. 2000) (internal quotes omitted). Aetna's decision "will be deemed reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." <u>Cash</u>, 107 F.3d at 641 (internal quotes omitted). We will not disturb a decision supported by a reasonable explanation "even though a different reasonable interpretation could have been made." <u>Id</u>. We consider "[b]oth the quantity and quality of the evidence." <u>Fletcher-Merrit v. NorAm Energy Corp</u>., 250 F.3d 1174, 1179 (8th Cir. 2001).

In order to continue receiving benefits under the plan, plaintiff's disability had to prevent her from "engaging in each and every occupation or employment for wage or profit for which [she was] reasonably qualified by reason of education, training or experience or may reasonably become qualified." App. at 76-77. The record demonstrates that Aetna's decision to deny benefits to plaintiff was not unreasonable. Dr. Huseman, plaintiff's nephrologist, indicated that her nephrotic syndrome had been resolved. Dr. Meyers reported to Dr. Feder that plaintiff was doing "quite well," that she no longer had angina, that she had begun to do household chores, and that she was able to walk short distances. Dr. Meyers also informed Dr. Feder that plaintiff had "reasonably recovered from her angina, coronary artery disease, and bypass grafting." He also informed Dr. Feder that he encouraged plaintiff to be active and to begin a

regular walking program. In fact, Dr. Meyers reported to Dr. Feder that plaintiff was to begin aquatic aerobics, and that he did not need to see her again. Most importantly, Dr. Feder, who had certified the plaintiff disabled on previous occasions, and to whom Dr. Meyers deferred, specifically stated that her cardiac problems were stable. While acknowledging that she still had collagen vascular disease, Dr. Feder reported that plaintiff could perform sedentary work that involved mostly sitting with the ability to stand and stretch. Aetna's conclusion that plaintiff was not permanently disabled under the plan was not unreasonable under these facts.

Nor do we think subsequent medical evidence submitted to Aetna with plaintiff's appeal rendered Aetna's affirmance of the denial unreasonable. Dr. Beauchamp's May 8 letter did not definitively state that plaintiff was disabled. It said that she had a "host" of medical problems that *should* qualify her for disability. There was no elaboration on what exactly her disabling condition might be. Similarly, Dr. Abdou discounted the diagnosis of collagen vascular disease made by Dr. Lynch, a neurologist, and agreed with by Dr. Feder and Dr. Stechschulte, who, like Dr. Abdou, are rheumatologists. Even if the opinions of Drs. Beauchamp and Abdou are valid assessments of plaintiff's disability, that is not our inquiry here. Our task is to determine whether Aetna's "decision is supported by a reasonable explanation." Cash, 107 F.3d at 641. We think it is. In addition, we do not think it unreasonable for Aetna to credit Dr. Feder's opinion over those of Drs. Beauchamp and Abdou. "[W]here there is a conflict of opinion, the plan administrator does not abuse his discretion in finding that the employee is not disabled." Donaho v.FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996). Therefore, we hold that Aetna did not abuse its discretion in denying disability benefits to plaintiff.

III.

For the foregoing reasons, the judgment of the District Court is reversed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.