# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3054

_____

| | |
|---|---|
| Russell L. Wakkinen, | * |
| | * |
| Plaintiff/Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the |
| UNUM Life Insurance Company of | * District of Minnesota. |
| America; UNUM Provident | * |
| Corporation, | * |
| | * |
| Defendants/Appellees. | * |

_____

Submitted: March 16, 2007
Filed: July 2, 2008

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Russell Wakkinen was denied long-term disability benefits under a plan offered by his employer. After exhausting his administrative appeals, he brought this action against UNUM Life Insurance Company and UNUM Provident Corporation (collectively "UNUM") as the issuers of the policy. Wakkinen alleges that UNUM's decision to deny his claim for disability benefits is in violation of the Employee

Retirement Income Security Act of 1974 ("ERISA"). The district court[1] granted summary judgment to UNUM and denied Wakkinen's summary judgment motion, holding that UNUM did not abuse its discretion in denying Wakkinen's claim and that the administrative record supports UNUM's determination that Wakkinen failed to meet the policy's 180-day elimination period. We affirm.

I.

Russell Wakkinen is a certified public accountant who was employed by RSM McGladrey as a Senior Manager in its Financial Management Group. His position was that of a business consultant. As such, Wakkinen was covered by a UNUM Life Insurance Company long-term disability policy offered by his employer ("the policy"). Wakkinen has suffered from a variety of medical conditions over the past twenty years. He was diagnosed with fibromyalgia in 1998 and began treatment for major depressive disorder in 1999. Those conditions, along with chronic fatigue syndrome, were the basis for his request for long-term disability benefits.

Wakkinen's last day of work was November 30, 2001. On December 3, he urgently saw his treating psychiatrist when he felt particularly depressed and realized that he had no work to record on his time sheets for the past two months. He had also become unable to take care of his own hygiene, housework, and other needs. The psychiatrist, Dr. Bebchuk, completed a six-week work excuse for him due to severe depression and suggested that he seek approval for short-term disability. Wakkinen applied for and received short-term disability benefits from December 3, 2001 through May 31, 2002. Those dates begin and end his 180-day elimination period, a time during which a claimant must be continuously disabled to be eligible for benefits.

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

During those six months, Wakkinen received medical care from a number of providers. Dr. Bebchuk continued to monitor his medication for depression, and he also saw a psychotherapist, Dr. Nye. Wakkinen returned to his internist, Dr. Lehman, complaining of excessive tiredness and continued difficulties due to fibromyalgia. On January 9, 2002, he asked Dr. Lehman for a "disability slip" for fibromyalgia, and while Dr. Lehman agreed that Wakkinen had issues with pain, he felt that most of his fatigue and inability to work were psychiatric. Dr. Lehman declined to provide the slip and advised Wakkinen to discuss his disability with Dr. Bebchuk. Wakkinen had a sleep study performed at Dr. Lehman's direction in April, but its results were inconclusive. On May 28, Wakkinen began seeing Dr. Brutlag, a specialist in physical medicine, for treatment of his fibromyalgia and pain. In her notes from his first visit, Dr. Brutlag recounted the extensive treatment he had received for the condition: physical therapy, ultrasound, TENS, massage therapy, acupuncture, home exercise, medication, activity restriction, aerobics, Chi Gong (a practice involving breathing and movement exercises), and meditation. She noted that he was struggling tremendously with his pain level, fatigue, and overall endurance and energy level. In addition to her own treatment, Dr. Brutlag referred Wakkinen to Dr. Stormo for pain management counseling.

Wakkinen filed his claim for long-term disability benefits under the policy in April 2002. He listed severe depression combined with fibromyalgia and chronic fatigue syndrome as the disabling sicknesses which had left him unable to work since December 3, 2001. In addition to having to demonstrate that he was "disabled" as defined by the policy, Wakkinen also had to show that he was continuously disabled to satisfy a 180-day elimination period and be eligible for long-term disability benefits. The policy states,

> You must be continuously disabled through your elimination period. Unum will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

-3-

UNUM denied Wakkinen's claim on the basis that the only work restriction that was supported during the elimination period was that of major depression, and it was not supported past April 8, 2002. Although UNUM recognized that Wakkinen continued to suffer depression after that date, it concluded from the medical records that his condition was not severe enough to prohibit occupational functioning. Thus, UNUM concluded that under the terms of the policy, Wakkinen was not continuously disabled because he was not limited from performing the material and substantial duties of his regular occupation throughout the elimination period.

Dr. Bebchuk was the only medical care provider that Wakkinen listed on his disability claim form, and on April 30, 2002, he completed the Attending Physician's Statement that supported the claim. He provided a diagnosis of "major depressive disorder recurrent in partial remission" that began on November 5, 2001, but with symptoms that first appeared in August 1999. Dr. Bebchuk's notes from his next few encounters with Wakkinen tell of changes in his condition. Dr. Bebchuk wrote following his May 20 appointment that Wakkinen "feels better than he has in a long while. He is more optimistic and finds that his activity level has increased. . . . Activity level would suggest that he can probably return to work on a part-time basis." Dr. Bebchuk gave him a note that day to return to a twenty-hour work week as of June 3. However, eight days later Wakkinen telephoned Dr. Bebchuk and expressed his concern about returning to work. He did not feel able to work full-time, and he recounted that his employer had earlier told him that part-time was not an option. Dr. Bebchuk urged him to get more information about whether he could return to work on a part-time basis and work up to full-time, and Wakkinen agreed to do so. Three days later, on May 31, Wakkinen telephoned Dr. Bebchuk again and stated that his depression and headaches were such that he was "incapacitated to the point where he has regressed somewhat from our last visit. As such, he is not ready to return to work even on a part-time basis and would benefit from continued medical leave." Dr. Bebchuk approved the continuation of his short-term disability until June 30.

The UNUM policy defines "disabled" as being "limited from performing the material and substantial duties of one's regular occupation due to sickness or injury," with a corresponding "twenty percent or more loss in indexed monthly earnings." Had Wakkinen been considered disabled due to one of his physical conditions, he would have received payment under the policy until he reached age 67. If UNUM had determined that he was disabled due to depression, he would have received benefits for only twenty-four months. Wakkinen was 48 years old at the time he submitted his claim.

Wakkinen appealed the denial three times, arguing that he was disabled due to depression and physical problems. During this process, he provided UNUM with records from care he continued to receive after May 31, 2002, the end of his elimination period. He first saw Dr. Stormo, a psychologist, on June 10. She diagnosed him with chronic pain disorder associated with both psychological and medical factors, major depressive disorder, adjustment disorder, fibromyalgia, chronic pain and fatigue, and other anxiety issues. She noted that several factors may have compromised his ability to cope with pain and increased his disability. Wakkinen continued his therapy with Dr. Stormo over the next seven months, and her notes reflect that he often spoke of the uncertainty of his financial situation and his difficulties in functioning. Dr. Bebchuk continued to prescribe and monitor Wakkinen's medications to treat his major depressive disorder. Wakkinen also began receiving trigger point injections from Dr. Brutlag to relieve pain. On October 8, 2002, Dr. Brutlag wrote that Wakkinen had been completely disabled since August 1 due to fibromyalgia, chronic pain, and severe fatigue, and she opined that his disability was likely to continue until at least November 15. Dr. Brutlag continued to treat Wakkinen and to administer trigger point injections, which would provide him pain relief for up to three weeks. Wakkinen also saw a chiropractor beginning in September 2002, when he wrote that one of his goals for treatment was to get back to work.

Following UNUM's original denial on October 7, 2002, Wakkinen submitted new notes from Drs. Bebchuk and Brutlag excusing him from work through July 31 and November 15, respectively. Although UNUM did not find the information sufficient to reverse its decision because it lacked supporting medical documentation, it treated the submission as Wakkinen's first appeal. Dr. Brutlag's note listed Wakkinen's disabling conditions as fibromyalgia, chronic fatigue, and severe chronic pain, and Dr. Bebchuk's notes listed depression. Accordingly, UNUM chose a clinical consultant nurse, Dr. Jacobson (occupational medicine physician), and Dr. Brown (psychiatrist and neurologist) to review Wakkinen's file. They concluded that Wakkinen's chronic depression was characterized by periods of worsening and improvement, and that the period of November 1, 2001 to April 4, 2002 was the only time during which restrictions and limitations were supported. UNUM also concluded that the clinical findings and tests concerning Wakkinen's fibromyalgia did not indicate that he was physically impaired to the point of being unable to function. UNUM thus upheld its denial of Wakkinen's claim because it continued to find that he was not prevented from working in his regular occupation throughout the 180-day elimination period. Its letter detailing the review and decision is dated January 15, 2003.

Wakkinen then retained the services of counsel who submitted an appeal (Wakkinen's second) with additional supporting documentation on May 1, 2003. The documents included updated medical records from the same providers whose records already had been supplied to UNUM along with those of a rheumatologist, pain specialists, and chiropractor. Wakkinen also submitted statements from his former wife and his two children concerning the changes in his physical condition and abilities. UNUM had the documents summarized by a nurse and reviewed again by Dr. Brown from a psychiatric perspective and by Dr. Jacobson with respect to Wakkinen's physical conditions. Dr. Brown concluded that Wakkinen's depression was mild to moderate with no suggestion of significant impairment and "continued waxing and waning of symptoms." The additional information did not cause him to

change his earlier conclusion of no disability. Dr. Jacobson found that some of the clinical findings were inconsistent with an inability to perform activities such as housework – no loss of muscle strength or tone, frequent and regular exercise and working out with weights – and noted that Dr. Brutlag had deemed Wakkinen disabled through November 15 without providing any clinical explanation. Although the records spoke of a long history of fatigue and sleep difficulties, Wakkinen had only one sleep study with results that were not clinically significant. There was no documentation of cognitive functional impairment, but rather the entries showed that Wakkinen was alert and oriented and able to follow commands. On July 30, 2003, UNUM issued its denial of Wakkinen's second appellate review and upheld its original decision.

Wakkinen's counsel made one additional attempt to have UNUM reverse its decision by responding to several points raised in UNUM's most recent denial letter. The only new medical evidence he submitted included progress notes from his first appointment with Dr. Brutlag, chiropractic records, and records from Wakkinen's office visits with Drs. Bebchuk and Brutlag since his May 1, 2003 appeal. In other words, Wakkinen submitted only one item of new medical evidence with his attorney's March 1, 2004 letter that went to the issue of whether he was disabled throughout his 180-day elimination period ending May 31, 2002. That item was Dr. Brutlag's notes from Wakkinen's first appointment with her on May 28, 2002. Her objective findings contained nothing remarkable, and her assessment was that he had chronic mild cervical sensory findings following a diskectomy and fusion, and that he had fibromyalgia. She noted that he was having an extremely difficult time coping with pain, fatigue, overall endurance and energy, and that he would benefit from pain management to allow him to pace his activities and thereby reduce his pain.

UNUM responded on May 13, 2004, and noted that Dr. Brutlag's report did "not support a level of decreased functionality" and thus did not alter the denial of Wakkinen's claim. UNUM informed him that he had exhausted his administrative

remedies and that it would not conduct any further appellate reviews. Although Wakkinen sought reconsideration once again, UNUM declined to re-open its claim proceedings. Wakkinen brought this action, and on cross-motions for summary judgment, the district court denied Wakkinen's motion and granted UNUM's.

## II.

We review de novo the district court's summary judgment ruling, Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 640 (8th Cir. 1997), and whether the district court applied the appropriate standard of review to the administrator's decision, Clapp v. Citibank, N.A. Disability Plan, 262 F.3d 820, 826 (8th Cir. 2001). The district court applied an abuse of discretion standard, which is appropriate when an ERISA plan grants discretionary authority to the plan administrator to determine eligibility for benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Wakkinen argues that the district court erred by not applying a de novo standard of review because the plan did not grant UNUM the discretion that warrants a more deferential standard and because conflicts of interest and serious procedural irregularities caused a breach of UNUM's fiduciary duty.

We conclude that the district court did not err in deciding that UNUM's denial is subject to an abuse of discretion review. The district court thoroughly analyzed Wakkinen's arguments in favor of a less discretionary standard by examining the record and correctly applying the law.

## A.

Wakkinen asserts that the policy as issued does not grant UNUM the discretion to make benefit determinations, and thus its denial of Wakkinen's claim is subject to de novo review. Wakkinen's argument depends upon an incomplete look at what constitutes the policy. By its terms, the UNUM plan consisted of all policy provisions

and amendments, the employees' signed applications, and the certificate of coverage. The certificate states, "When making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." An amendment to the policy, effective December 1, 2001 (two days before the onset of Wakkinen's claimed disability), provides:

> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

These provisions adequately state the requisite discretion granted to UNUM under the policy. See Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839 (8th Cir. 2001). The district court was correct in applying an abuse of discretion standard of review.

B.

Wakkinen argues that UNUM should be afforded no deference because he has presented "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). Wakkinen alleges both were present.

The first conflict of interest he urges is that UNUM Life both administered the plan and was the self-insured provider of benefits due under the plan. Acknowledging the state of the law as it existed when he filed his brief, Wakkinen conceded that no conflict of interest could be assumed in such a situation. However, the Supreme Court

-9-

has recently held that a plan administrator which both evaluates claims for benefits and pays benefit claims (as UNUM does) is operating under a conflict of interest. Metropolitan Life Ins. Co. v. Glenn, ___ U.S. ___, 2008 WL 2444796, at *5 (U.S. June 19, 2008). The rule holds true for both employers and insurers who hold dual roles. Id. at *5-7. Although the conflict is more apparent where it is the employer who both funds the plan and evaluates the claims, the Court noted that it exists just the same for insurers. ERISA requires a plan administrator to discharge its discretionary duties solely in the interests of the plan's participants and beneficiaries, it mandates full and fair review of claim denials, and it "supplements marketplace and regulatory controls with judicial review of individual claim denials." Id. at *7.

However, the existence of a conflict did not lead the Court to announce a change in the standard of review. We are to review an administrator's discretionary benefit determination for abuse of discretion. Id. The Court concluded that "a conflict should be weighed as a factor in determining whether there is an abuse of discretion." Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. See Langbein, supra, at 1317-1321 (detailing such a history for one large insurer).

Glenn, at *9 (citing John H. Langbein, Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 Nw. U. L. Rev. 1315, 1323-1324 (2007)).

Even though no conflict of interest could be assumed pre-<u>Glenn</u>, Wakkinen argued in his brief that a palpable conflict exists because UNUM engaged in unlawful procedures in handling his claim. The procedures he refers to are those that were subject to a multistate examination of the claims handling practices of UNUM Life and other subsidiaries of UNUM Provident. These practices are the subject of the law review article quoted by the Supreme Court in the passage above. In September 2003, the Department of Labor and state regulators began a joint examination of claim files and claim administration and policy manuals from these companies to determine if their disability income claims handling practices reflected systemic unfair claim settlement practices. The examiners found several areas of concern, including excessive reliance upon in-house medical professionals, unfair construction of attending physician or independent medical exam reports, failure to evaluate the totality of the claimant's medical condition, and inappropriate burdens placed on claimants to justify their eligibility for benefits. The result was a plan of corrective action implemented through a regulatory settlement agreement and consent orders entered into with the states.

We are instructed by <u>Glenn</u> to give importance to this conflict of interest, "perhaps . . . great importance," <u>Glenn</u> at *9, depending upon how closely the other factors are balanced. The findings of the investigation are troubling, and we do not minimize their import. Taking into account the remaining factors discussed below, we conclude that there is not a sufficiently close balance for the conflict of interest to act as a tiebreaker in favor of finding that UNUM abused its discretion. <u>See</u> <u>id.</u>

Wakkinen asserts that another procedural irregularity existed in that UNUM lacked knowledge of Wakkinen's condition and failed to inquire into his fibromyalgia and chronic fatigue syndrome when it denied his claim. We continue to examine this claim under <u>Woo v. Deluxe Corp.</u>, 144 F.3d 1157, 1160 (8th Cir. 1998). The record does not support his argument. Although Wakkinen's medical records mention fibromyalgia and chronic fatigue syndrome, his application for benefits was supported

-11-

by a single attending physician's statement from Dr. Bebchuk attributing his disability to "major depressive disorder recurrent in partial remission." None of his treating physicians opined until well after the elimination period had ended that another condition was disabling . Dr. Brutlag wrote a one-sentence note which Wakkinen provided to UNUM on October 9, 2002: "Totally disabled 8/1/02 thru 11/15/02 due to fibromyalgia, chronic fatigue & severe chronic pain."

Wakkinen also argues that UNUM failed to conduct an independent review by a physician with appropriate expertise, thereby creating a procedural irregularity. He questions the ability of Dr. Jacobsen, a board-certified occupational medicine physician, to offer an opinion on Wakkinen's fibromyalgia. However, Wakkinen points to no evidence that calls into question the expertise of Dr. Jacobsen personally or of a doctor who specializes in occupational medicine to offer an opinion on the condition of fibromyalgia. As the district court pointed out, UNUM did not doubt the diagnosis. Rather, it consistently took the position that Wakkinen's fibromyalgia was not sufficiently severe during his 180-day elimination period to render him disabled from performing his occupation, and Wakkinen's own doctors provided no opinion to the contrary.

Finally, Wakkinen argues that a procedural irregularity existed because UNUM did not conduct an independent review of his claim during each of his appeals. Dr. Bolinger, a board-certified psychiatrist, conducted a clinical review of Wakkinen's original application. Dr. Bolinger agreed that sufficient evidence existed to support a diagnosis of major depression, recurrent. However, he concluded that the medical records only supported psychiatric restrictions and limitations to the point of prohibiting occupational functioning through April 8, 2002. Wakkinen complains that, in his first appeal, Dr. Jacobsen's review was not independent because he consulted Dr. Bolinger's report. The record suggests no such inference. In Wakkinen's first appeal, his file was reviewed by a clinical consultant from a psychiatric perspective, Dr. Bolinger, a clinical consultant from a physical

perspective, and Dr. Jacobsen. In response to Wakkinen's second appeal, Dr. Bolinger and an appeals specialist reviewed his file, and a clinical consultant conducted the review in his third appeal. Wakkinen has not demonstrated that UNUM failed to independently review his claim on appeal.

The district court was correct in reviewing the administrator's determination for abuse of discretion.

III.

Wakkinen argues that UNUM's denial of his application for benefits was improper under any standard of review, but he acknowledges the deference that is implicit if the question is whether the plan administrator abused its discretion. Under that standard, we will not disturb the administrator's decision if it was reasonable. We measure reasonableness by whether substantial evidence exists to support the decision, meaning "more than a scintilla but less than a preponderance." Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir. 1998). We examine only the evidence that was before the administrator when the decision was made, and we are to determine whether a reasonable person could have – not would have – reached a similar decision. Phillips-Foster v. UNUM Life Ins. Co., 302 F.3d 785, 794 (8th Cir. 2002).

With this in mind, we consider the ways in which Wakkinen asserts that UNUM abused the discretion granted it under the plan. He argues that UNUM did not address the physical causes of his disability until his first appeal, and then it did not give due consideration to the new evidence he submitted. The record does not support Wakkinen's argument. As we have already discussed, although he listed depression, fibromyalgia, and chronic fatigue syndrome as disabling conditions on his application for benefits, depression was the only condition for which he submitted a treating doctor's opinion of disability. UNUM determined that Dr. Bebchuk's conclusion was not supported by his own treatment records, which showed him urging Wakkinen to

return to work just days before he pronounced him disabled. It was therefore not unreasonable for UNUM to deny Wakkinen's application for long-term disability benefits due to depression.

When Wakkinen submitted his first appeal with additional medical records, virtually all of those were for care he received before the alleged onset date or after the elimination period ended. The only medical opinion he offered as to the disabling nature of his fibromyalgia condition came from Dr. Brutlag, and she wrote that the disability began in August 2002, well after the elimination period. Wakkinen never submitted any medical evidence to the effect that chronic fatigue syndrome limited him from performing his job during the 180-day elimination period. The additional mental health records came from Dr. Bebchuk, but those records contained no new information with respect to Wakkinen's depression during the relevant 180 days. Wakkinen also provided records from Dr. Stormo, with whom he began treatment in the summer of 2002, but he acknowledges that Dr. Stormo offered no opinion that Wakkinen was disabled.

While we do not doubt that Wakkinen has suffered from each of these significant medical conditions, and one or more may well have rendered him disabled after the elimination period ended, that does not deter our conclusion that the plan administrator's decision to deny benefits was reasonable. The policy requires him to be continuously disabled through the 180 days of his elimination period to be eligible for benefits. Because substantial evidence exists that he was not continuously disabled from December 3, 2001 through May 31, 2002, we will not disturb the administrator's decision. See Butts v. Cont'l Cas. Co., 357 F.3d 835, 839 (8th Cir. 2004).

While Wakkinen objects to the reasons UNUM gave in denying his initial claim and each of his appeals, UNUM was consistent in its position. UNUM concluded that Wakkinen had not demonstrated through his own treatment records that depression,

fibromyalgia or chronic fatigue syndrome, or any combination of those conditions precluded him from performing the material and substantial duties of his position through the elimination period. We have examined the same record and we conclude that substantial evidence exists to support UNUM's decision. Although UNUM was operating under a conflict of interest when it denied Wakkinen's claim, the remaining facts in the case indicate that it did not abuse its discretion.

We affirm the judgment.

_____