# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-1897

_____

Dennis Siegel

*Plaintiff - Appellant*

v.

Connecticut General Life Insurance Company; Group Long Term Disability for
Salaried Employees of Lockheed Martin Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: November 14, 2012
Filed: January 2, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Dennis Siegel brought this action for judicial review after Connecticut General
Life Insurance Company terminated his disability benefits in 2007. The district court[1]

_____

[1]The Honorable Thomas J. Shields, Chief United States Magistrate Judge for
the Southern District of Iowa, presiding by consent of the parties pursuant to 28

denied discovery and granted judgment to Connecticut General after concluding that it had not abused its discretion in terminating Siegel's benefits. Siegel appeals, and we affirm.

Siegel worked as a software developer for Lockheed Martin Corporation (previously Martin Marietta Corporation). Lockheed had a disability benefit plan through Connecticut General which provided long term benefits to disabled employees. Under the 1994 policy that governed the plan, an employee would receive benefits if he became unable to perform the essential duties of his occupation due to an illness or injury. If the employee's disability was due to mental illness, he would stop receiving benefits after the first two years unless he was "totally disabled." That was defined as being unable to perform the essential duties of any occupation for which the employee was or could reasonably become qualified. A totally disabled employee was entitled to collect benefits indefinitely. If at any time an employee was found no longer eligible, he would stop receiving benefits. According to the agreement between Lockheed and Connecticut General, changes to the terms of the plan could be made only through an amendment signed by Lockheed and an executive of Connecticut General.

Siegel first applied for benefits in 1995, stating that he had developed severe depression in 1993 which had required him to take leaves of absence from Lockheed in 1993 and 1995. Siegel also submitted a claim form filled out by his psychiatrist indicating that his client had severe depression. Connecticut General approved Siegel's claim in October 1995. In November 1997 it reapproved his claim for continued benefits, concluding that he was incapable of employment in "any occupation." Connecticut General requested and received periodic updates from Siegel's doctors regarding his condition.

---

U.S.C. § 636(c).

In 2002 Lockheed and Connecticut General executed an agreement entitled "Employee Welfare Benefit Plan Appointment of Claim Fiduciary" (claim fiduciary appointment). The agreement stated that Connecticut General's sister company Life Insurance Company of America (LINA) would be appointed as "claim fiduciary" and would have responsibility for adjudicating all claims and appeals for benefits under the Lockheed plan. LINA was expressly given authority "in its discretion" to "interpret the terms of the plan" and "decide questions of eligibility." Lockheed advised plan beneficiaries in a summary plan description in 2005 that its insurance carrier would have "full discretionary authority to interpret and construe the terms of the Plan [and] to decide questions related to the payment of benefits."

Siegel sent a letter to LINA in 2006 asking whether he could obtain part time employment without losing his disability benefits. Siegel described his family's tightening budget and asked "the number of hours [he] could potentially work and/or the amount of income allowed." LINA informed Siegel of the relevant provisions of the plan which allowed totally disabled beneficiaries to pursue "rehabilitative work" for a limited time.

LINA opened an investigation into Siegel's continued eligibility and requested that he complete a questionnaire about his daily activities. Siegel reported that he used a computer daily, watched television for five to six hours, did laundry, attended religious services, volunteered two days a week for one hour, and could drive a "couple hundred miles with breaks." Siegel explained that he was unable to return to work due to a "lack of concentration and inability to plan and follow through."

LINA then sought records and questionnaires from each of Siegel's physicians related to his ability to work. Dr. James Beeghly, Siegel's psychiatrist, indicated that he suffered from "[p]ersistent and unremitting depressed mood and pessimistic outlook," "poor ability to focus," "poor ability to maintain pace," and "poor ability to apply self-discipline." Dr. Beeghly reported that Siegel's memory, thought process,

-3-

and judgment were normal. In one of his office notes obtained by LINA, Dr. Beeghly expressed frustration that Siegel had not been seeing a therapist as he had recommended. Siegel's other physicians reported only minor conditions and either declined to perform a disability assessment or did not report that he was disabled.

LINA informed Siegel in September 2007 that his benefits would be terminated, explaining that it had concluded he was no longer incapable of employment. Siegel was invited to provide additional medical opinions and supporting documentation if he disagreed with LINA's conclusion. Siegel responded with additional documentation in March 2008. A form filled out by his primary care physician indicated that Siegel was disabled, but it did not give any further information as to his medical history, diagnosis, or treatment. Several sections were left blank. A report by a neuropsychologist who had examined Siegel concluded that he likely had "relatively severe, presumably treatment-resistant depression" but that there was "no evidence for neuropsychologically based intellectual or memory impairment."

Two experts retained by LINA conducted an independent review of Siegel's file. After reviewing Siegel's medical documentation, psychologist Dr. Nick DeFilippis concluded that he retained several functional capabilities. These included "ability to focus and concentrate," "higher level executive functioning,"[2] and social skills. Based on Dr. DeFilippis' findings, vocational rehabilitation specialist Ginny Schmidt identified three entry level occupations in which Siegel could work: repair order clerk, production clerk, and mail sorter. LINA informed Siegel in September

---

[2]Executive function "describes a set of cognitive abilities that control and regulate other abilities and behaviors," including "the ability to initiate and stop actions, to monitor and change behavior as needed, and to plan future behavior when faced with novel tasks and situations." 1 The Gale Encyclopedia of Mental Health 592 (Kristen Key ed., 3d ed. 2012).

2008 that after reviewing his entire file, it had concluded he was capable of employment and therefore no longer disabled.

Siegel filed an administrative appeal with LINA in June 2009. Siegel submitted additional reports from his psychiatrist Dr. Beeghly, his neuropsychologist Dr. John Bayless, and two other physicians who had subsequently examined him. LINA then retained another psychiatrist, Dr. Jack Greener, to review Siegel's records. Dr. Greener concluded that the reports from Drs. Beeghly and Bayless did not objectively support a finding of total disability. In October 2009 LINA affirmed its decision to terminate Siegel's benefits, and it ceased payments to him.

Siegel filed an ERISA action in the district court on April 1, 2010, seeking review of LINA's decision. See 29 U.S.C. § 1132(a)(1)(B). Siegel sought discovery from LINA, including a subpoena to depose Dr. Greener, but the district court granted LINA a protective order. The parties then agreed to have a court trial limited to the administrative record. Each side then moved for judgment in its favor. The district court granted LINA's motion for judgment, concluding that LINA had not abused its discretion because it had conducted a full and fair review and there was substantial evidence to support its decision. Siegel appeals, arguing that the district court should have applied de novo review, but that even under an abuse of discretion standard LINA's decision should be overturned. Siegel also appeals the district court's decision granting LINA a protective order related to his discovery requests.

Siegel first contends in his appeal that the district court erred in applying an abuse of discretion standard. He argues that the court should have reviewed LINA's decision de novo because the plan documents did not grant LINA discretionary authority to adjudicate claims. We review de novo whether the district court applied the correct standard of review. Clapp v. Citibank, N.A. Disability Plan, 262 F.3d 820, 826 (8th Cir. 2001).

The standard of review for a denial of benefits when challenged under § 1132(a)(1)(B) is de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If there has been a valid grant of discretionary authority, the administrator or the fiduciary's decision is reviewed for abuse of discretion. Jobe v. Medical Life Ins. Co., 598 F.3d 478, 481 (8th Cir. 2010).

When Siegel first filed this action, the case was presided over by a district judge.[3] Prior to the reassignment to a magistrate judge, the district judge ordered the parties to file memoranda regarding the appropriate standard of review. Connecticut General argued that abuse of discretion review was appropriate because the 2002 claim fiduciary appointment had given LINA discretionary authority to interpret the plan and decide questions of eligibility. Siegel argued that de novo review was appropriate because the original policy did not grant LINA discretionary authority. Citing a 1988 version of the policy document which provided that amendments had to be "endorsed on or attached to" the policy, Siegel contended the claim fiduciary appointment had been invalid. Siegel did not reference the 1994 version of the policy, however. The district judge concluded that the claim fiduciary appointment had been invalid and that LINA's decision would be reviewed de novo.

With the consent of the parties the case was subsequently assigned to a magistrate judge who determined that the 1994 policy governed Siegel's claim. Since the 1994 policy did not require that amendments be "endorsed on or attached to" it, the magistrate judge concluded that the claim fiduciary appointment had been a valid amendment and that LINA's decision would be reviewed for abuse of discretion.

---

[3]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

Siegel now concedes that the 1994 policy governs this case. While that policy is silent on the question of discretionary authority, it provides that the terms of the plan may be altered "by amendment signed by the Policyholder and by the Insurance Company acting through its President, Vice President, Secretary, or Assistant Secretary." The 2002 claim fiduciary appointment was signed by vice presidents of Lockheed and LINA. It provided that LINA would have authority "in its discretion" to "interpret the terms of the Plan" and "decide questions of eligibility," effective immediately. Thus, the plan as amended grants LINA discretionary authority. We conclude that the magistrate judge correctly reviewed LINA's decision for abuse of discretion. See Jobe, 598 F.3d at 481; Raybourne v. Cigna Life Ins. Co., 576 F.3d 444, 448–49 (7th Cir. 2009).

Siegel contends that the claim fiduciary appointment also failed to comply with the amendment procedure of the 1994 plan because it was signed by an executive of LINA rather than by an executive of Connecticut General. LINA and Connecticut General are both wholly owned subsidiaries of CIGNA Life Insurance Company, and there is no evidence that this procedure was irregular or objectionable to either Lockheed or Connecticut General. Siegel also contends that the claim fiduciary appointment was merely an application for an amendment because it stated that the "Plan Administrator hereby applies to the Claim Fiduciary for amendments to its Policies to recognize its appointment of the Claim Fiduciary." Although there is some ambiguous wording, the document clearly states that it "hereby appoints" LINA as claim fiduciary, effective immediately, and that LINA "hereby accepts this appointment." This was an effective grant of discretionary authority, and the magistrate judge appropriately reviewed for abuse of discretion.

Siegel next argues that LINA's decision should have been overturned even under a deferential abuse of discretion review. We review the district court's application of the abuse of discretion standard de novo and will affirm LINA's decision if it was reasonable and supported by substantial evidence. Clapp, 262 F.3d

at 828. Substantial evidence is "more than a scintilla, but less than a preponderance." Id. (quoting Sahulka v. Lucent Techs, Inc., 206 F.3d 763, 767–68 (8th Cir. 2000)). Since LINA is both insurer and decision maker, "we take that conflict [of interest] into account and give it some weight in the abuse-of-discretion calculation." Carrow v. Standard Ins. Co., 664 F.3d 1254, 1258–59 (8th Cir. 2012).

We agree with the district court that LINA did not abuse its discretion in terminating Siegel's benefits. To be "totally disabled" under the plan's definition, Siegel must have been unable to perform the essential duties of "any occupation for which [he is] or may reasonably become qualified." There was substantial evidence from which LINA could reasonably conclude that Siegel was able to work. Siegel expressed an interest in part time work and had asked LINA how much he could work and earn without losing his disability benefits. Although Siegel's treating physicians indicated that he suffered from depression and lack of motivation, they did not identify any specific impairments or deficiencies. Only Dr. Beeghly was willing to certify that Siegel was disabled, and even he expressed some doubt on the subject. The experts retained by LINA all agreed that while Siegel exhibited symptoms of severe depression, he was not totally incapable of employment. We conclude that on this record, it was not an abuse of discretion to terminate Siegel's benefits.

Siegel's final argument is that the district court erred in denying him the opportunity to depose LINA's expert. We review the district court's ruling for abuse of discretion. Jones v. ReliaStar Life Ins. Co., 615 F.3d 941, 945 (8th Cir. 2010). When an administrator's decision is reviewed for abuse of discretion, the scope of review is limited to the evidence before the administrator. Willcox v. Liberty Life Assur. Co., 552 F.3d 693, 698 (8th Cir. 2009). The magistrate judge determined there was no "material evidence of bias" and that a deposition would "unduly delay" review of the case. This was not an abuse of discretion.

Accordingly, we affirm the judgment of the district court.

———————————————