SMITH, Circuit Judge,
dissenting.
I respectfully dissent. Like the district court, I conclude that Reliance Standard abused its discretion in denying Hampton long-term disability benefits. Specifically, in reaching its decision, Rebanee Standard failed to consider relevant federal regulations specifically referenced by Hampton’s physician. I would affirm the judgment of the district court.
Where “ ‘the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,’ ” we review the administrator’s decision for abuse of discretion. Siegel v. Conn. Gen. Life Ins. Co., 702 F.3d 1044, 1049 (8th Cir.2013) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). “‘A plan administrator abuses its discretion when it ignores relevant evidence.’ ” Gerhardt v. Liberty Assurance Co. of Boston, 736 F.3d 777, 780 (8th Cir.2013) (quoting Willcox v. Liberty Life Assurance Co. of Boston, 552 F.3d 693, 701 (8th Cir.2009)).
“[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.” Firestone, 489 U.S. at 115, 109 *603 S.Ct. 948 (quotation and citation omitted). “[W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.” Glenn, 554 U.S. at 117, 128 S.Ct. 2343. In these cases, “any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor’s inherent or case-specific importance.” Id. Where “the record in [a] case contains little evidence about either [the administrator’s] claims administration history or its efforts to ensure that claims assessment is not affected by the conflict,” “this Court gives the conflict some weight.” Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 934 (8th Cir.2010) (emphasis added).
Here, Reliance Standard relies on the loss-of-lieense clause in the Plan to argue that Hampton’s loss of his commercial driver’s license does not alone constitute “Total Disability.” Reliance Standard’s interpretation of this clause is reasonable — a loss of license alone does not equate to, or is not determinative of, “Total Disability.” However, Hampton’s case includes more than the absence of a license; it includes proof of the presence of a disabling physical condition. The question is whether other evidence exists that Hampton is “Totally Disabled” because he cannot “perform the material duties of’ a long-haul truck driver “due to an Injury or Sickness.” I find that there is evidence apart from the loss of license demonstrating Hampton’s “Total Disability” — specifically, the federal regulations — that Reliance Standard failed to consider in denying Hampton’s claim for long-term disability benefits. See Gerhardt, 736 F.3d at 780.
The relevant Federal Motor Carrier Safety Regulations define the “general qualifications of drivers” as follows:
(a) A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. Except as provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.
(b) Except as provided in subpart G of this part, a person is qualified to drive a motor vehicle if he/she ...
(4) Is physically qualified to drive a commercial motor vehicle in accordance with subpart E — Physical Qualifications and Examinations of this part....
49 C.F.R. § 391.11 (emphasis added).
In turn, the federal regulations set forth the “physical qualifications for drivers,” providing:
(a)(1)© A person subject to this part must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so, and, ... when on-duty has on his or her person the original, or a copy, of a current medical examiner’s certificate that he or she is physically qualified to drive a commercial motor vehicle....
(b) A person is physically qualified to drive a commercial motor vehicle if that person—
(3) Has no established medical history or clinical diagnosis of diabetes melli-tus currently requiring insulin for control
49 C.F.R. § 391.41 (emphases added).
The United States Department of Transportation (DOT) has provided the following regulatory guidance for interpreting § 391.41:
*604 Question 1: Wbo is responsible for ensuring that medical certifications meet the requirements?
Guidance: Medical certification determinations are the responsibility of the medical examiner. The motor carrier has the responsibility to ensure that the medical examiner is informed of the minimum medical requirements and the characteristics of the work to be performed. The motor carrier is also responsible for ensuring that only medically qualified drivers are operating CMVs in interstate commerce.
* * *
Question 3: What are the physical qualification requirements for operating a CMV in interstate commerce?
Guidance: The physical qualification regulations for drivers in interstate commerce are found at § 391.41. Instructions to medical examiners performing physical examinations of these drivers are found at § 391.43. Interpretive guidelines are distributed upon request. The qualification standards cover 13 areas which directly relate to the driving function. All but four of the standards require a judgement by the medical examiner. A person’s qualification to drive is determined by a medical examiner who is knowledgeable about the driver’s functions and whether a particular condition would interfere with the driver’s ability to operate a CMV safely. In the case of vision, hearing, insulin-using diabetes, and epilepsy, the current standards are absolute, providing no discretion to the medical examiner.
Regulatory Guidance for the Federal Motor Carrier Safety Regulations, 62 FR 16370-01, 1997 WL 153864, at *16410-11 (DOT Apr. 4,1997).
In turn, the Medical Advisory Criteria for Evaluation applicable to § 391.41(b)(3) states:
A person is physically qualified to drive a commercial vehicle if that person:
Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control.
Diabetes mellitus is a disease which, on occasion, can result in a loss of consciousness or disorientation in time and space. Individuals who require insulin for control have conditions which can get out of control by the use of too much or too little insulin, or food intake not consistent with the insulin dosage. Incapacitation may occur from symptoms of hyperglycemic or hypoglycemic reactions (drowsiness, semiconsciousness, diabetic coma, or insulin shock).
The administration of insulin is within itself, a complicated process requiring insulin, syringe, needle, alcohol sponge and a sterile technique. Factors related to long-haul commercial motor vehicle operations such as fatigue, lack of sleep, poor diet, emotional conditions, stress, and concomitant illness, compound the diabetic problem. Because of these inherent dangers, the FMCSA[1] has consistently held that a diabetic who uses insulin for control does not meet the minimum physical requirements of the FMCSRs.[2]
(Emphases added.)
In the present case, Dr. Hawkins opined in his June 2011 letter to Reliance Standard that he “d[id] not feel that Mr. Hampton will be able to obtain gainful employment noting his insulin dependent diabetes mellitus, which precludes him from operating any sort of heavy machin *605 ery or motorized vehicles based on the Department of Transportation regulations [(“DOT regulations”)].” Appellants’ App. at 78 (emphasis added). Although Dr. Hawkins makes only a general reference to the DOT regulations, his reference to Hampton’s “insulin dependant diabetes mellitus” makes clear that he was referencing 49 C.F.R. § 391.41(b)(8). In rendering his medical opinion, Dr. Hawkins never stated that Hampton was physically incapable of performing the material duties of his job because he could not obtain a license; instead, he opined that Hampton could not perform such duties “based on the Department of Transportation regulations.” As detailed supra, these regulations and the accompanying guidance make clear that Hampton, who no one disputes is insulin-dependent with diabetes mellitus, is physically disqualified from driving a long-haul commercial vehicle because of the delineated risks and inherent dangers arising from his sickness. Put another way, Hampton is physically incapable of performing the material duties of a long-haul truck driver because of diabetes mellitus.
In denying Hampton benefits, Reliance Standard never referred to the relevant federal regulations in conjunction with Dr. Hawkins’s June 2011 letter. In doing so, it failed to consider all relevant evidence. See Gerhardt, 736 F.3d at 780. Taking into account’s Reliance Standard’s position as both administrator and insurer, I conclude that Reliance Standard abused its discretion in denying Hampton long-term disability benefits. See id. Accordingly, I would affirm the judgment of the district court.

. Federal Motor Carrier Safety Administration

. Federal Motor Carrier Safety Regulations